JOURNAL ENTRY AND OPINION
Plaintiff-appellant Kenneth Locsei appeals from the trial court's decision granting the summary judgment of the defendant-appellee Mayfield City School District, the appellant's employer. The appellant filed this action alleging that he is a handicapped person who can safely and substantially perform the essential functions of his job and that adverse employment action was taken by the appellee, at least in part, because of his handicap.
The appellant first began his employment with the appellee in January 1991. At this time he was assigned as a substitute custodian at the high school. In May 1991 the appellant interviewed for and obtained a position at Lander Elementary School (Lander) as a second shift Class I custodian. The appellant remained in this position until April 1997 when he was transferred to the high school. The appellant asserts that he was intentionally transferred into a job at which he was predestined to fail, due to his handicap, unless he received reasonable accommodations. These accommodations were not provided.
Prior to his employment with the school system, the appellant suffered an industrial accident. The appellant suffered a traumatic brain injury which left him paralyzed on the left side of his body and has affected the appellant's memory. After surgery and therapy, the appellant graduated from a wheelchair, to a walker, to a cane. In two years or so he was able to walk as he does now, with a pronounced limp and a much slower pace than normal. The appellant has lost all feeling in his left foot, easily loses his balance, his toes do not move, his knee snaps back, he has an irregular gait and negotiating stairs presents difficulties.
According to the appellant, at the time he applied for the job with the appellee, his limitations did not impact on his ability to effectuate the duties of a custodian. The appellant testified at his lengthy deposition that, while he is able to fulfill the requirements of the custodial position at Lander, the job in which he is now placed at the high school exceeds the limits of his capability. The appellant stated that the pain in his back, legs and hip began to increase in 1993 and that, as the years go by, his muscles or tendons atrophy causing more difficulty. The transfer to the high school has exacerbated this worsening pain. The appellant stated that the size of the area he was assigned to clean was just too large and there was too much walking involved.
For the first few years at Lander the appellant had no interpersonal difficulties with his supervisors. During the 1993-1994 school year this changed and the relationship began to deteriorate. However, the record reflects that the appellant's June 1996 performance evaluation rated the appellant as good or outstanding in all categories except two. Under the categories of "punctuality/promptness" and "ability to work with others" the appellant received a checkmark in the satisfactory/improvement needed column. The written portion of this evaluation noted that the appellant had a previous injury to his knee and ankle and that he was reporting additional pain which was causing him to miss work. The appellant was directed to take corrective measures to improve attendance and to exhibit loyalty to his superiors.
By April 1997, the appellant's relationship with his supervisors, Ms. First, the head day custodian, and Ms. Stephan, the principal, had completely eroded. In this evaluation he received an unsatisfactory in "punctuality/promptness" and a satisfactory/needs improvement in "courtesy/manners/self control", "ability to work with others," "completes work related assignments and follows oral and written instructions," and "maintains an effective working relationship with teachers, school officials, the general public and co-workers." The written portion of the evaluation stated that the appellant performed his cleaning duties in an acceptable manner and that he goes beyond the standard cleaning regimen during summer and other breaks by restoring the aluminum on the windows, polishing doorknobs, etc. He was also reported to have a good rapport with certain teachers, however, there was a need to improve rapport with supervisors and other teachers. Amongst other recommendations, he was directed to promote harmony with all staff on a consistent basis.
The appellant testified at his deposition that he was repeatedly criticized for failing to perform portions of his work which he knew he had already completed. The appellant testified that Ms. Stephan harbored ill will towards him and began a paper trail in order to remove him from Lander. The appellant believed he was being "set up" based on his handicap. The appellant gave examples of instances when he was ordered to perform work not within his job description. He believed these orders were given to provoke him into losing his temper. Instead, Loscei simply began performing the task. At one point Ms. First ordered that bags of garbage be carried down the stairs two at a time. When he informed her that it was unsafe for him to do so, she stated that if she could do it, he could do it. He responded that she had two good legs and that he did not. He was ordered to do it anyhow, but when he ignored the order was found to be insubordinate.
Another issue was the appellant's use of sick time. Apparently there were innuendos from his supervisors regarding his use of sick time to plow snow in the winter. The appellant denied doing so. The appellant did not know how many days he had taken for sick leave, but stated that it did not exceed his contract allotment. The appellant affirmed in his affidavit that there were problems between he and Ms. First regarding her alleged habitual tardiness and her alleged pilfering. The appellant stated that Ms. First was very insecure about her job and that she was not adept at making the repairs her position required her to make.
On March, 27, 1997, prior to the transfer to the high school, a meeting was held with the school system superintendent at that time, Dr. Abbot. The meeting was attended by the appellant; Dr. Abbot; Rodney Olenchick, the appellant's union representative; and Mr. Lynn Schreffeler, head of buildings and grounds. Olenchick affirmed that at the meeting, the appellant informed Dr. Abbot that he was able to clean his area at Lander without further injury to his leg, but that at the high school, injury to his leg was likely. Olenchick informed Dr. Abbot that transferring the appellant to that particular area of the high school would be setting the appellant up for failure.
Prior to the meeting, the appellee was in receipt of a letter dated March 25, 1997, addressed to Dr. Abbot, from a teacher at Lander, Ms. Gottschalk. Ms. Gottschalk informed Dr. Abbot that the accusations against the appellant were unjust and that the appellant was being set up based upon his handicap.
The record contains a letter dated March 26, 1997, from the appellant's physician, Dr. Stephen Combs, stating that the appellant was his patient and detailing the appellant's medical problems. Dr. Combs stated that these problems preclude the appellant from doing serial stair climbing and limits the number of chairs the appellant may move in a single day. Additionally, the appellant presented to the school system a letter from his physical therapist indicating that the pain in the appellant's knee and hip is aggravated by prolonged walking. The therapist requested a modification to decrease the time the appellant was required to stand.
As a result of this letter from Dr. Combs, Dr. Larry Boulware examined the appellant on behalf of the school board. Dr. Boulware's first letter to the school system indicates that the appellant has spasticity of the left lower extremity, but stated that this physical abnormality was present in his former job [at Lander] and that there is nothing in the history or examination to suggest that there is a worsening of the process. Subsequently, Dr. Boulware observed the appellant on the job site and submitted an addendum. Dr. Boulware found the appellant to have difficulty walking. He also stated: "At this time I see no clear medical reason to restrict [the appellant's] activities. However, I do believe that the extended walking is aggravating [the appellant's] medical condition." Dr. Boulware concluded by finding this to be a very complicated issue.
On May 27, 1997, Dr. Combs sent a letter to the school system which explained the appellant's injuries and informed them that permission was being awaited to perform surgery on the appellant. Dr. Combs then requested that the appellant be permitted to return to his former workload so that his system was not overtaxed and to allow the appellant to gain the reserves needed to return to his exercise program. A third doctor was agreed upon by the parties, and, as a result, Dr. Jack Andrish examined the appellant as well.
In the appellant's work status report, Dr. Andrish recommended that the appellant undergo surgery. The report noted that the appellant could return to medium work duty. Medium work is defined on the form as "lifting 50 pounds maximum with frequent lifting and/or carrying objects weighing up to 25 pounds." Dr. Andrish also placed two restrictions on the appellant's return to work. Dr. Andrish stated that the appellant does not have unlimited walking ability and standing ability and stating that a "Smaller area of coverage better for patient." Dr. Andrish's report noted that the appellant's difficulties are complex and that there is no procedure to normalize the appellant's condition. Finally, Dr. Andrish stated that the appellant would benefit by limiting the extent of his walking during the day; and that walking is not doing the appellant permanent harm, but it is certainly reasonable to expect that it is aggravating his pain and limiting his overall endurance.
On April 7, 1997, the appellant was transferred to the high school. At the high school, the appellant's duties entailed general cleaning such as mopping, washing tables, windows, bathrooms, sweeping carpets, and cleaning the wood and metal shops. The appellant was also required to assist in "set ups" for basketball games in the gymnasium. The appellant's cleaning schedule had to be altered in order to accommodate community functions in the cafeteria. His area was difficult because of the greater area and because the public at times re-enters areas already cleaned. This necessitates re-cleaning those areas. The bathrooms for which he was responsible were the most difficult in the building because they are open to the public in the evening. The appellant deposed that he was unable to clean the entire area every night and that he attempted changes in routine in order to accomplish his tasks, but in the end, no one was satisfied.
The appellant believes that he has not been given the proper tools with which to perform his tasks. He states that chemicals and supplies are not stored where he can easily obtain them, that he has been prohibited from storing these chemicals in his own "slop" closet, and that equipment was stored far from his area, requiring walking which tires his leg. The appellant has requested that these items be stored more conveniently for his use, but this accommodation has been denied. The appellant deposed that he had carried chairs in excess of his limitations because he is given such a difficult time by other employees if he stops.
The appellant believes that he has managed to make some adjustments in his work to accommodate his physical difficulties, such as carrying tables with one arm, while still maintaining efficiency. Suggestions given by his supervisors regarding changing his working habits were not practical because they did not accommodate his disability. The appellant also points out that the union had filed a grievance with the school system regarding the area the appellant was assigned to clean, stating that the area is too large to clean effectively by one person. He requested, but was denied, assistance from fellow custodians when they finished their tasks. The appellant believes he is doing a good job given the time he is allotted. Complaints from Curtis Early, Bill Schneider and Glen Ramsey regarding his performance are brought to his attention almost every day. From Mr. Lombardo, the high school principal, the appellant received letters regarding deficiencies.
The appellant stated that he was threatened by other co-workers, and that when he reported the harassment the appellee did nothing. At least one co-worker threatened him with physical violence and two others verbally threatened him. One incident was witnessed by Clara Merritt, a fellow custodian. The appellant stated that other co-workers did such things as purposefully spilling coffee on the floor in his area and shunning him in the lunchroom.
The appellant filed this lawsuit on October 1, 1997. On October 30, 1997, the appellee held its first disciplinary hearing regarding the appellant. Ultimately, the appellant was suspended for six days without pay from April 6, 1998 to April 13, 1998 for neglect of duty and discourteous and inappropriate behavior toward his supervisors (Burkholder Depo. T. 150).
The appellant's immediate supervisor, head night custodian at the high school, Bill Schneider, acknowledged that the appellant had asked for help cleaning his area. Schneider was of the opinion that the appellant should be able to clean his area and, therefore, even when other custodians were finished with their areas, no help was assigned to him. Schneider knew that a grievance had previously been filed by the union regarding the size of the appellant's area. Mr. Schneider was aware that there was a restriction on the appellant's ability to move chairs, but he was unaware of the specifics. He left it up to the appellant to cease moving chairs when the limit had been reached. He was aware that a report was filed regarding the appellant falling down stairs.
Glen Ramsey, the night supervisor of building, grounds and equipment, had observed the appellant's performance of his work over 100 times prior to 1997 and found the appellant to be adequate. In 1997 he was asked by Lynn Schreffler to follow the appellant around on the job and assist the appellant in becoming more efficient. Ramsey followed the appellant around for a three week period. Ramsey found the appellant was not completing his work because he was "walking in circles" and doing nothing. The appellant did not exhibit this behavior while at Lander. Ramsey acknowledged that the high school area was more difficult to clean because of the heavy traffic and that the area required an organized employee. Ramsey did not believe that certain cleaning methods caused the appellant pain; rather, he found the appellant was resistant to changing his methods. Ramsey deposed that every time the appellant was asked to do something differently, his leg suddenly hurt. Ramsey acknowledged that the appellant had difficulty bending down.
At the end of the three weeks, Ramsey believed the appellant's job performance was improved. When asked whether or not it would be a hardship to the school to direct a custodian who was done with an assigned area to assist the appellant in finishing his area, Ramsey answered that it not school policy. Ramsey then stated that he knew of no such policy, but that he does not have the authority to order it.
Curtis Early, the high school supervisor of building, grounds and maintenance, deposed that the appellant has requested a smaller area to clean, cleaning supplies kept closer to his area, and help from other custodians as accommodations for his disability. Mr. Early indicated that the appellant was provided with some of the items he requested, such as assistance in changing light bulbs, special gloves, face protection, and a back brace.
Mr. Lynn Schreffler, supervisor of buildings, grounds and equipment, testified at his deposition that the appellant complained about something or other on a daily basis. Mr. Schreffler believed that the appellant was able to and had enough time to clean his area, but instead spent his time walking through the hallways. Schreffler was informed by Dr. Burkholder that the appellant had medical restrictions on daily stair climbing and moving chairs. He was aware that the appellant was injured on two occasions when he was moving tables/chairs up and down stairs. Schreffler was also aware that a grievance had been filed by the union regarding the area the appellant cleaned.
In November 1997, Mr. Schreffler began video taping the appellant's area in order to have evidence of how well the area had been cleaned. It was the end of October before Schreffler was aware that there was a serious problem with the cleanliness of the appellant's area. Schreffler was aware that the appellant had requested accommodations for his disability such as a smaller area or help from other custodians. Although he had never made any inquiries, Schreffler did not believe that other custodians had time to finish their own work and then assist the appellant. Mr. Schreffler was aware that the appellant's co-workers refused to work with him and shunned him from the lunchroom. As a result, during work requiring group effort, Schreffler directed Mr. Early to assign the appellant tasks which would enable the appellant to work alone.
During his deposition, Mr. Schreffler was asked about the appellee's expert report indicating that the area assigned to the appellant required the longest time to clean when compared with other areas of the high school. Mr. Schreffler admitted that, perhaps, the appellee needed to reevaluate the areas and that, possibly, the appellant's area would be downsized.
On March 31, 1998, the appellant was charged with neglect of duty and given a daily list of items he had failed to complete. This was to continue from March 13 until the end of the school year, but after May, the list was no longer given to the appellant. The appellant stated that there were times when the list contained items which had already been cleaned and that when he attempted to have a supervisor check, he was refused.
One incident clearly outlines the differing version of events related by the parties. Dr. Burkholder, who has been the school superintendent since June 14, 1997, testified at her deposition that she received a telephone call from another high school custodian, Clara Merritt. Ms. Merritt, an African-American, informed the superintendent that the appellant would enter her work area and make inappropriate racial remarks. Dr. Burkholder stated that Ms. Merritt related that these comments made her uncomfortable.
Attached to the appellant's brief in opposition to the appellee's motion for summary judgment is the affidavit of Clara Merritt. Ms. Merritt affirmed that:
 Last year, I called Dr. Suzanne Burkholder to tell her that Ken Locsei had overheard other custodians at the High School telling racial jokes that offended me. Dr. Burkholder refused to believe that those jokes were being told. I never said to Dr. Burkholder that Ken was personally making racial comments which I found offensive or that I wanted him to stay away from my area.
Ms. Merritt also affirmed that her cleaning area was next to the appellant's; that although the appellant worked hard, his area was too large for him to complete in one shift; and that the appellant is able to perform all aspects of the job, but that sometimes he is too tired or in too much pain to finish the area because of his leg or because of the size of the area. Ms. Merritt stated that the appellant was written up unfairly on two occasions. On one occasion, the appellant was reprimanded for failing to clean bathrooms and on another occasion for failing to turn out lights. Ms. Merritt affirmed that she had cleaned the bathrooms and had turned out the lights herself and that she so informed the supervisor. Ms. Merritt also affirmed that she observed two other custodians, Tom Kump and Jim Smrcina, confront the appellant in his area. The men were angry about the appellant's complaint to the supervisor regarding Smrcina's having thrown a chair at him. Smrcina was shaking his finger in the appellant's face and Kump also had words with the appellant.
The appellant sets forth one assignment of error:
 THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT ("MSJ") OF DEFENDANT-APPELLEE MAYFIELD CITY SCHOOL DISTRICT ("DEFENDANT SCHOOL DISTRICT) AND DISMISSING; THE COMPLAINT OF PLAINTIFF-APPELLANT KENNETH LOCSEI ("PLAINTIFF LOCSEI").
The appellant asserts that he has placed sufficient evidence in the record to demonstrate that he has met the criteria to establish a prima facie case of handicap discrimination. Mr. Locsei asserts that he has shown that he is a handicapped person who can safely and substantially perform the essential functions of his job and that adverse employment action was taken by the appellee, at least in part, because of his handicap. The appellant asserts that the appellee transferred him to another position even after they were informed that he could not adequately perform the new job; that the appellee failed and refused to provide him with reasonable accommodations; and that he was subject to a hostile work environment.
This court reviews the lower court's grant of summary judgmentde novo. Adelman v. Timman (1997), 117 Ohio App.3d 544; Brown v.Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704. An appellate court applies the same test as the trial court. Bryans v. EnglishNanny and Governess School, Inc. (1996), 117 Ohio App.3d 303. Summary judgment is appropriately rendered when no genuine issue as to any material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; it appears from the evidence that reasonable minds can come but to one conclusion; and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Turner v. Turner (1993),67 Ohio St.3d 337, citing to Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, and Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64. A court is permitted to grant a motion for summary judgment where all of the tests provided in Civ.R. 56 are met. See Celotex Corp. v. Catrett (1986), 477 U.S. 317, 323.
The Ohio Supreme Court has held that Chapter 4112 must be construed liberally for the accomplishment of its purpose, a strong public policy against discrimination. Genaro v. CentralTransport, Inc. (1999), 84 Ohio St.3d 293. There is no place in this state for any sort of discrimination, no matter its size, shape or form or in what clothes it might masquerade. Id. at 296. This includes discrimination in the workplace. Genaro, supra.
In the employment discrimination context, a "qualified handicapped person" means a handicapped person who can safely and substantially perform the essential functions of the job in question, with or without reasonable assistance. Ohio Civ. RightsComm. v. Case W. Res. Univ. (1996), 76 Ohio St.3d 168.
The term "handicap" has been defined by the legislature in R.C.4112.01(A)(3) as follows:
 "`Handicap' means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or impairment; or being regarded as having a physical or mental impairment."
The Ohio Supreme Court recently reiterated the elements of a claim for discrimination based upon a handicapping condition. InColumbus Civ. Serv. Comm. v. McGlone (1998), 82 Ohio St.3d 569, the court noted held that:
 To establish a prima facie case of handicap discrimination, the person seeking relief must demonstrate (1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question.
Once a plaintiff has established a prima facie case of handicap discrimination, the burden shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action. Hood v.Diamond Products, Inc. (1996), 74 Ohio St.3d 298, citing toPlumbers Steamfitters Joint Apprenticeship Commt. v. Ohio Civ.Rights Comms. (1981), 66 Ohio St.2d 192. Legitimate non-discriminatory reasons for the action taken by the employer may include, but are not limited to, insubordination on the part of the employee claiming discrimination, or the inability of the employee to safely and substantially perform, with reasonable accommodations, the essential functions of the job in question.Hood, supra, at 302. Once the employer establishes a non-discriminatory reason for the action taken, then the employee must demonstrate that the employer's stated reason was a pretext for impermissible discrimination. Id.
In Betosky v. Abbot Laboratories (Sept. 19, 1996), Franklin App. No. 96APE03-373, the court considered a hostile work environment claim by an employee with a handicap. The court, citing to Harris v. Forklift Systems Inc. (1993), 510 U.S. 17, found that to establish a prima facie case of a hostile work environment a litigant needs to establish that: 1) the litigant has a protected handicap; 2) the litigant was subjected to un-welcomed verbal or physical conduct; 3) the litigant was harassed by such unwelcomed verbal or physical conduct; 4) the alleged harassment had the effect of unreasonably interfering with the litigant's work performance and created an intimidating, hostile or offensive environment; and, 5) that respondeat superior
liability exists.
In the case sub judice, the record, when viewed in a light most favorable to the appellant, contains ample evidence to support the appellant's prima facie claim of handicap discrimination. The appellant presented evidence that he is a handicapped person for purposes of R.C. 4112.02 by submitting medical evidence that he has difficulty walking, lifting, and carrying. There was testimony that the appellant has difficulty with bending and repeated stair climbing. Secondly, the appellant presented evidence by way of a letter from a teacher at Lander, Ms. Gottschalk, that his supervisors at Lander were attempting to "set him up" based upon his handicap. Certainly there is evidence in the appellant's deposition that he believed this to be true. The school system was informed, prior to transferring the appellant from Lander to the high school that to do so would adversely impact the appellant's physical disability and would therefore set the appellant up for failure. Thirdly, the appellant also submitted evidence that he is able to safely and substantially perform the essential functions of the job of a custodian. The appellant's evaluations at Lander clearly indicate that the appellant, while having interpersonal difficulties with his supervisors, is able to perform the major tasks required of a school custodian.
The appellant also presented testimony regarding his claim of a hostile work environment. He stated that the treatment he was subjected to by some of his fellow custodians included threatens, sabotaging of his cleaning area, and ostracism from the lunchroom. The appellant stated that his co-workers acted out of fear that they would be required to undertake additional duties to assist the appellant. The appellee's response was to ostracize him further. The appellant's requests for reasonable accommodations, such as a smaller work area, assistance cleaning, and closer storage of materials, were denied. The appellant contends that he was subject to intense scrutiny by his supervisors which differed from that given to his fellow employees. He was subject to having a supervisor follow him for weeks and having notes taken regarding his job performance.
The appellee counters the appellant's contention that he was discriminated against based on his handicap with testimony and documents indicating that the appellant was not an otherwise qualified person because he was unable to meet the required standard of cleaning in his position of a high school custodian. It is abundantly clear from the deposition testimony of the Mayfield employees and administrators that they believed that the appellant could perform his job if he chose, but that he refused. The school system presented evidence that the appellant failed to follow through on his charges of harassment by his co-workers. The appellee contends that the close supervision of the appellant was designed to assist him in retaining his position as a custodian.
The appellant, in the reply brief, rebuts the appellee's arguments regarding both the claim for discrimination based upon handicap and the claim for a hostile work environment. The appellant states that he is a qualified handicapped person because, contrary to the appellee's assertions, constant walking is not a requirement of the custodial position. The appellant asserts that he has performed the essential tasks of the job such as mopping, making minor repairs, vacuuming, dusting, washing windows and walls, and wiping tables and chairs. The appellant admits to quantitative limitations in the amount and manner of performance of his work, but points out that none of the medical professionals have concluded that he is qualitatively incapable of performing his job.
The appellant argues that the appellee's assertion that there was no adverse employment action based upon his handicap is incorrect. The appellant notes that he does not challenge the right of the school administration to manage its personnel, but that when the school intentionally transferred him to a position at which he was predestined to fail, based upon his handicap, without reasonable accommodations, it was an adverse employment action. The appellant contends that he was predestined to fail based upon his documented quantitative limitations caused by his handicapped condition. The appellant points out that the appellee had input from the appellant's union representative prior to his transfer which indicated that the appellant would be unable to perform the requirements of the high school position. The school system was also in receipt of the letter from Ms. Gottschalk that the appellant had been unfairly treated, based upon his handicap, at Lander. This court notes with interest that the appellee's expert found after evaluating the work areas at the high school that the appellant's area took the longest to clean and that the administration, through the testimony of Lynn Schreffler, essentially conceded that the distribution of work needs to be adjusted.
As to the appellant's claim of a hostile work environment, the appellee argues that there is no evidence that such threats were related to the appellant's physical condition. Rather, the appellee attributes the treatment the appellant received to the appellant's aggressive and annoying conduct towards his co-workers. The appellant contends that it did investigate the appellant's allegations as demonstrated by the exhibits attached to the appellant's deposition.
The appellant construes the evidence differently. The appellant points out that he stated in his deposition testimony that he was transferred to an oversized area, he was obstructed in the performance of his duties when supplies were found missing from his cart, there were contrived shortages of supplies when he needed them, he received verbal threats of physical violence from co-workers, and he was harassed and disciplined by his supervisors, all based upon his handicap. The appellant asserts that the notes made by his supervisors were of an investigatory nature and used to discipline him rather than to assist him in the performance of his duties.
The appellant has met his burden under McGlone, supra, and presented sufficient evidence, when construed in his favor, to surmount summary judgment on his claim for discrimination based upon his handicap. Likewise, the record contains sufficient evidence to surmount summary judgment on the appellant's claim for a hostile work environment.
The appellant's assignment of error is well taken.
Judgment reversed and remanded.
It is ordered that appellant recover of appellee his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ____________________________ JAMES D. SWEENEY, JUDGE.
 LEO M. SPELLACY, J., CONCURS and TERRENCE O'DONNELL, P.J.,DISSENTS.