In re REPUBLIC TECHNOLOGIES
INTERNATIONAL, LLC, et al.,
Debtors.

Republic Technologies International,
LLC, Plaintiffs,

v.

William Maley, et al., Defendants.

Bankruptcy No. 01–5117.
Adversary No. 01–5122.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Sept. 20, 2002.

Linda C. Ashar, Lorain, OH, for defendants.

Lucy K. O'Shaughnessy, Cleveland, OH, for plaintiff.

## MEMORANDUM OPINION STAYING PARTIES AND COUNSEL FROM PURSUING STATE COURT ACTION AND SCHEDULING SHOW CAUSE HEARING

MARILYN SHEA-STONUM, Bankruptcy Judge.

On July 11, 2001, Republic Technologies International, LLC ("RTI") filed a Complaint initiating this adversary proceeding. Through its Complaint, RTI seeks a declaratory judgment that the automatic stay in effect in its main chapter 11 case also act to stay a pending state court lawsuit brought by William and Marjorie Maley against non-debtor third party former managers of RTI, Mark Miller ("Miller") and Ken Knaga ("Knaga")(the "Maley Lawsuit"). During a pre-trial conference held in this matter on March 19, 2002, a briefing schedule was established for the parties to address whether the action against the debtor in possession's former employees who may be entitled to indemnification by the debtor in possession represents an "end run" around the automatic stay.[1] Thereafter, the following pleadings were filed: (1) "Republic Technologies International, LLC's Brief in Support of Automatic Stay Under Fed. R. Bankr.P. 9011[sic] and Bifurcated Issue" [**docket # 24**]; (2) "Defendants' Reply to Republic

---

1. In addressing that question, both parties were to assume that the individual named defendants might have a claim against RTI for indemnification with respect to the costs of defending the Maley Lawsuit.

Technologies International, LLC's Brief in Support of Automatic Stay Under Fed. R. Bankr.P. 9011[sic] and Bifurcated Issue" [**docket # 29**].

The Maleys contend that under Ohio law they are permitted to file a state court lawsuit directly against Miller and Knaga in their capacity as supervisors. RTI contends that the Maleys misread applicable Ohio case law. In addition RTI contends that the Maleys violated the automatic stay by filing the Maley Lawsuit.

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. It is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b). The following constitutes this Court's conclusions of law pursuant to the undisputed facts in this matter and FED. R. BANKR. P. 7052.

## A. BACKGROUND

The following background facts are not disputed by the parties to this adversary proceeding.

1. William Maley ("Maley") was employed by RTI at its Lorain, Ohio operations facility from February 7, 2000 until his termination from employment on October 23, 2000.

2. At all times during Maley's employment, Mark Miller ("Miller") was the Area Manager for RTI and Maley's indirect supervisor.

3. At all times during Maley's employment, Kenneth Knaga ("Knaga") was a human resources manager for RTI having some responsibilities at the Lorain Facility, but not as Maley's supervisor.

4. Miller was separated from his employment with RTI in September 2001 and

Knaga was separated from his employment with RTI in March 2001.

5. On April 2, 2001, RTI and several subsidiaries commenced their reorganization cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. RTI and its filing subsidiaries continued in possession of their property and operated and managed their businesses as debtors in possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

6. On April 17, 2001, Maley initiated the Maley Lawsuit in the Court of Common Pleas for Lorain County, Ohio against RTI, Knaga and Miller alleging that the three defendants participated in or caused Mr. Maley's termination from RTI without just cause in violation of Ohio's age discrimination statute, Ohio Rev.Code § 4112, and public policy. The Maleys and their counsel stated in the Complaint that "RTI has filed to reorganize under Chapter 11 of the U.S. Bankruptcy Code, a matter pending in the U.S. Bankruptcy Court in Akron, Ohio."

7. A First Amended Complaint was filed in the Maley Lawsuit on May 21, 2001. The First Amended Complaint added Marjorie Maley's name and address in the caption as a plaintiff and removed RTI's name and address from the caption as a defendant.

8. On July 11, 2001, RTI filed its Complaint for Declaratory Judgment Extending Automatic Stay to Postpetition Lawsuit Pending in the Court of Common Pleas for Lorain County, Ohio. Adv. Pro. 01–5122.

9. RTI maintains and pays for a "Directors, Officers and Private Company Liability Insurance Policy" which includes employment practices liability coverage, underwritten by National Union Fire Insurance Company of Pittsburgh, Pennsylvania (the "Insurance Policy").

The Insurance Policy remains in effect. Its application to this litigation is yet to be determined.

10. On October 31, 2001, the Maleys through their counsel filed a Proof of Claim against "Republic Technologies International, LLC," checking the box labeled "Personal injury/wrongful death" and adding, under "Other," "wrongful termination of employment," and claiming $2,000,000, the same amount demanded in the Maley Lawsuit.[2] Proof of Claim # 2531.

11. On May 9, 2002, Maley's deposition was taken, a copy of which was supplied to the Court. Appendix Binder in Support of Automatic Stay, [Docket No. # 25], Ex. A.

## B. DISCUSSION

### 1. Violation of the Automatic Stay

■ Section 362 of the Bankruptcy Code reads, in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of–

(1) the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced

against the debtor that arose before the commencement of the case under this title . . . .

By the wording of their own Complaint it is clear the Maleys' counsel knew that RTI had filed its bankruptcy petition prior to filing their case. The Maley Lawsuit was filed on April 17, 2001, naming RTI as the first party defendant and alleging in ¶ 5 that:

Maley was employed by Republic Technologies International ("RTI") in the City of Lorain, Lorain County, Ohio from February 7, 2000 to October 23, 2000. Maley was an employee within the meaning of Chapter 4112 of the Ohio Revised Code, R.C. § 4112.01(A)(1),(2). **RTI has filed to reorganize under Chapter 11 of the U.S. Bankruptcy Code, a matter pending in the U.S. Bankruptcy Court in Akron, Ohio.** (Emphasis added).

There can be no doubt that the filing of the Maley Lawsuit was a willful[3] violation of the automatic stay. 11 U.S.C. § 362(a)(1) prohibits the commencement or continuation of a judicial proceeding against debtors. None of the explanations or excuses posed by the Maleys' counsel to explain away the language acknowledging the bankruptcy filing by RTI are plausible or credible.[4]

---

2. The Proof of Claim was not signed by the Maleys, but by their counsel. No supporting documents were attached to the claim and to date RTI has not filed an objection.

3. The Code does not define the term "willful" but it has been interpreted to mean simply acting intentionally and deliberately while knowing of a pending bankruptcy. *Republic Technologies International, LLC v. Maley*, 275 B.R. 508, 522 (Bankr.N.D.Ohio 2002)(citing *Cuffee v. Atlantic Bus. & Cmty. Dev. Corp. (In re Atlantic Bus. & Cmty. Corp.)*, 901 F.2d 325, 329 (3rd Cir.1990)). Section 362(h) is not applicable to corporate debtors, but Fed. R.Civ.P. 11 and Fed. R. Bankr.P. 9011 are

separate bases for examining the conduct of Maleys' counsel. The Rule 11 issues are for the state court to address. This Court appropriately examines pleadings filed with this Court under Rule 9011. In particular, the subsequent denial by the Maleys' counsel that they knew of the RTI chapter 11 filing in mid-April is shown to be conclusively false by their own pleading.

4. The posturing of the Maleys' attorneys in pleadings filed in this adversary proceeding as to the wording of the Complaint raises an issue under Fed. R. Bankr.P. 9011. The wording of the complaint that was filed has been alleged, in various pleadings and at vari-

## 2. Maleys' Cause of Action for Age Discrimination and Proof of Claim

■ This adversary proceeding appears to raise an issue as to which there is no reported precedent. Debtors are protected from litigation with respect to alleged age discrimination while the automatic stay operates in this case. Citing *Genaro v. Central Transport, Inc.* (1999), 84 Ohio St.3d 293, 703 N.E.2d 782, which recognizes the possibility of several liability of supervisors/managers for discrimination pursuant to Ohio Rev.Code § 4112, Maley and his wife have proceeded with state court litigation against the two individuals who informed Maley of his separation from RTI. The precise question is under what circumstances, if any, can the DIP employer seek recognition or extension of the stay for the benefit of such supervisory personnel. Because the individual defendants are themselves no longer employed by RTI, a frequently used rationale for extending the stay, interfering with their contribution to the reorganization process, is not a factor in this case. The Court will identify principles and procedures for dealing fairly with all parties.

This Court is not purporting to decide the state court litigation or the factual issues in that case. There would be no issue preclusion effect of this opinion because the Court is not deciding those matters properly before the state court. But where, as here, individuals, such as Miller and Knaga, who have also lost their employment, will be in the position of having to defend litigation without their former co-defendant employer, there are compelling reasons for this Court to consider (1) whether plaintiffs' action in filing the amended complaint is an "indirect" violation of the automatic stay and (2) whether and under what circumstances § 105 should be employed to extend the automatic stay. In short, because the Maleys' counsel have chosen to read *Genaro* so expansively and erroneously, it is appropriate for the bankruptcy court to consider at what point the pursuit of the individuals in the state court action is an attempt to skin the automatic stay cat with another scalpel.

The Maleys allege that Knaga and Miller have personal liability under Ohio Rev. Code § 4112 for allegedly discriminating against Maley by terminating his employment at RTI. They also demand, through their Proof of Claim, $2,000,000 from RTI for "Personal injury/wrongful death" and "wrongful termination of employment."

At his deposition taken on May 9, 2002, Maley testified that he had never met Knaga until the day he was terminated, Maley deposition,[5] p. 25, l. 14–17, and that Miller was never his direct supervisor, acknowledging that Miller was "the area manager," p. 27, l. 13–20. He further testified that neither Miller nor Knaga ever evaluated him or reviewed his work, p. 37, l. 7–18. He stated he believed that Knaga was one of the RTI managers who made the decision to terminate him "be-

---

ous times, as being due to 1.) a clerical error, 2.) the fact that the Maleys were unaware of the filing, 3.) the fact that several drafts of the Complaint were circulating and the wrong draft was filed, and 4.) that defendants' counsel only learned that RTI had filed a few weeks after RTI's filing. None of these premises can excuse the fact that the Maleys' counsel plainly knew that RTI had sought bankruptcy protection including that provided by the automatic stay. The Federal Rules of

Procedure and the Bankruptcy Rules do permit pleading in the alternative but do not countenance the inconsistent and erroneous presentation of known facts.

5. For ease in reading, all references to the Maley Deposition will be to the page and line of the deposition, without identifying the deposition each time.

cause he was there" in the conference room when Maley was terminated, p. 48, 1. 2, and decided that Miller was another RTI manager who terminated him because "I worked in his area," p. 49, 1. 2. He testified that he did not know who actually decided to terminate his employment, p. 47, 1. 6–10, and stated "I don't know why I was terminated," p. 50, 1. 10–11. Maley further stated that the person who was retained in the function for which he also had responsibility had already been working in that position at the time he was transferred into the area, p. 52, 1. 7–21, and that his age was "approximately thirty," p. 41, 1. 10. Maley testified that RTI did not hire anyone to replace him, p. 53, 1. 2–5.

During the deposition he read part of paragraphs six and seven of his complaint which stated "Knaga participated in and caused termination of Maley's employment,"(¶ 5), and "Miller participated in and caused the termination of Maley's employment." (¶ 6). When asked if he had any facts, other than those stated above, to support his allegations, he stated "I don't have any other facts." P. 52, 1. 5–6.

In paragraph ten of his complaint Maley alleged "RTI further represented to Maley, orally and in writing, that if he accepted RTI's offer, Maley would be employed at RTI for a minimum of two years." (¶ 10). However, at his deposition Maley testified that the term of two years was only used in relation to his relocation package which stated that if he terminated his employment within two years, he was expected to reimburse RTI for the cost of his relocation. P.34, 1. 9–13. He further acknowledged that "[the document] didn't say anything else beyond that about a two-year employment duration." P. 35, 1. 7–10. RTI never asked him to reimburse the funds it paid for his relocation. P. 36, 1. 13–14.

In paragraph eighteen of his complaint Maley alleged, *inter alia*, that "as a direct and proximate result of defendants' unlawful, invidious, willful, and malicious acts of discrimination, Maley has suffered humiliation, severe emotional distress ..." When asked if he had any facts other than those stated above to support these allegations he stated "I am not in possession of any other facts." P. 54, 1. 14–15.

When asked to "describe all facts that support your claim that Mark Miller engaged in acts of discrimination against you," Maley replied "Mark Miller was aware of my age at the time I interviewed with him." [6] P. 60, 17–22. He testified that he "couldn't recall any derogatory remarks about [his] age made by Miller." P. 62, 1. 6–16. He also stated he believed Miller and Knaga were acting within the scope of their responsibilities when they terminated him. P. 81, 1. 14–22; p. 82, 1. 2–9.

When asked "Is Republic Technologies International also responsible for whatever it takes to make you whole?", Maley answered that RTI was "equally responsible for the wrong against me." P. 120, 1. 11–17.

Against these facts, the question for this Court is further refined to be whether the pursuit of an action against former management employees is stayed under § 362(a) or should be stayed under § 105 when (1) there is no evidence of personal animus by those individual managers against the plaintiff and (2) the reason that the plaintiffs cite for singling them out as defendants is that each was present when he received the news of his termination and one was his indirect supervisor. This requires consideration of Ohio law on

---

**6.** This statement undercuts the Maleys claim because he was hired by RTI.

which the plaintiffs rely in their state court action.

In *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 451 N.E.2d 807, the Ohio Supreme Court adopted the analytic framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The court held:

> In order to establish a prima facie case of age discrimination ... in an employment discharge action, plaintiff-employee must demonstrate (1) that he was a member of the statutorily-protected class, (2) that he was discharged, (3) that he was qualified for the position, and (4) that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class. Defendant-employer may then overcome the presumption inherent in the prima facie case by propounding a legitimate, nondiscriminatory reason for plaintiff's discharge. Finally, plaintiff must be allowed to show that the rationale set forth by defendant was only a pretext for unlawful discrimination.

*Barker*, paragraph one of syllabus. In *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Supreme Court held that "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Id.* at 121, 105 S.Ct. 613, (citing *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). "The shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the 'plaintiff [has] his day in court despite the unavailability of direct evidence.'" *Id.*, (citing *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir.1979)).

▬ In Ohio a plaintiff may bring an action for age discrimination by providing either direct or indirect evidence of such discrimination. *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272; *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439. An employee may establish a *prima facie* case of direct age discrimination by presenting evidence showing that the employer more likely than not was motivated by discriminatory intent. *Mauzy* at 587, 664 N.E.2d 1272. In *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the Supreme Court held:

> The man must do or fail to do something in regard to employment. There must be some specific external act, more than a mental act. Only if he does the act because of the grounds stated in the bill would there be any legal consequences.

*Id.* at 262, 109 S.Ct. 1775.

It appears from their pleadings that the Maleys have misconstrued Ohio law regarding the circumstances under which a cause of action for age discrimination may be brought directly against a supervisor or manager. In *Genaro v. Central Transport, Inc.* (1999), 84 Ohio St.3d 293, 703 N.E.2d 782, the Court answered a specific question of state law certified to it from the District Court. The specific question was: "For purposes of Ohio Rev.Code Ann.[Chapter] 4112, may a supervisor/manager be held jointly and/or severally liable with his employer for **his conduct** in violation of [R.C. Chapter] 4112 (emphasis added)?" Following its analysis the Court held that:

> Based upon the foregoing, we believe that the clear and unambiguous language of R.C. 4112(A)(1) and (A)(2) as well as the salutary antidiscrimination purposes of R.C. Chapter 4112, and this Court's pronouncements in cases involving workplace discrimination, all evidence that individual supervisors and managers are accountable for their own discriminatory conduct occurring in the

workplace environment. Accordingly, we answer the certified question in the affirmative and hold that for purposes of R.C. Chapter 4112, a supervisor/manager may be held jointly and/or severally liable with the employer for discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112.

*Genaro* at 300, 703 N.E.2d 782.

The holding in *Genaro* is that there must be some "discriminatory conduct" by the supervisor or manager. *See also Price Waterhouse* at 257, 109 S.Ct. 1775, *supra.* The Court in *Genaro* further held that individual supervisors or managers "are accountable for their own discriminatory conduct occurring in the workplace environment," and that "a supervisor/manager may be held jointly and/or severally liable with the employer for discriminatory conduct of the supervisor/manager." *Id.* at 300, 703 N.E.2d 782. Genaro requires that some conduct or actions be undertaken by the supervisor that were discriminatory. The Maleys contend that in *Genaro* the Supreme Court of Ohio held that the *McDonnell Douglas* test can be applied without any discriminatory actions or conduct on the part of the supervisor/manager. They appear to believe that they can apply the *McDonnell Douglas* test to impute to supervisors or managers such discriminatory actions or course of conduct if there is evidence that a statistical or indirect case may be proven under *McDonnell Douglas*.[7] The Ohio Supreme Court did not so hold in *Genaro*. *Genaro* clearly requires individual actions or a course of

conduct on the part of the supervisor or manager that rises to the level of discrimination before a plaintiff can claim against that supervisor or manager individually for the purposes of Ohio Rev.Code § 4112.[8]

From the facts adduced at Maley's deposition there appears to be no evidence of discriminatory acts or any discriminatory course of conduct on the part of Miller or Knaga. In addition, the Maleys allege no facts on which to base such a cause of action against RTI as well. The Maleys have produced no evidence of "discriminatory conduct," or any discriminatory actions taken by Miller or Knaga. The Maleys rely simply on the fact that the individual defendants informed Maley that his employment was terminated. Proof of individual conduct which constitutes discrimination is the only basis under which Ohio law would permit the Maleys to hold Miller and Knaga individually accountable in state court under *Genaro*. Maley never saw Knaga before the day of his termination. Maley stated that Miller was never his direct supervisor, had never evaluated him or reviewed his work, and had never made any remarks about his age.

The Maleys' counsel have misread *Genaro*. The Ohio Supreme Court has never held that the burden shifting analysis of *McDonnell Douglas* is applicable in a case where there was no discriminatory conduct or action engaged in by the supervisor/manager. That is not the holding of *Genaro*. The court finds that this miscon-

---

7. The Maleys reading of *Genaro* would lead to the illogical result that, if the prongs of the *McDonnell Douglas* test could be met, any supervisor or manager who merely informed an employee that his or her employment is to be terminated could be held individually liable in a cause of action for age discrimination.

8. Federal District Courts in Ohio have held, following *Genaro*, that "individual supervisors and managers are accountable for their own discriminatory conduct occurring in the workplace environment." *McCormick v. Kmart Distrib. Ctr.*, 163 F.Supp.2d 807, 820 (N.D.Ohio 2001), *see also Sublett v. Edgewood Universal Cabling Systems, Inc.*, 194 F.Supp.2d 692, 698 (S.D.Ohio 2002).

struction of *Genaro* by the Maleys' counsel is an attempt to reach RTI through their state court action against Miller and Knaga. Maley admits that Miller and Knaga were acting within the scope of their employment. Under Ohio law these defendants, if held liable, would assert a claim for indemnification against RTI. Ohio Rev. Code § 1701.13(E), *see also State ex rel. Greater Cleveland Regional Transit Authority, et al. v. Griffin*, 62 Ohio App.3d 516, 519, 576 N.E.2d 825 (1991). These undisputed facts demonstrate that the Maleys, through their counsel, seek to "end run" around the automatic stay and to continue the initial violation of the automatic stay which occurred with filing their lawsuit against RTI after it filed its chapter 11 petition. Because this holding appears to be one of first impression, the Court will also address an alternative basis for providing protection to Miller and Knaga from the harassment that would ensue from allowing the Maleys' to continue to prosecute the amended complaint.

### 3. Section 105

Section 105 of the Bankruptcy Code reads, in pertinent part:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce of implement orders or rules, or to prevent an abuse of process.

■ "The legislative history of § 105 makes clear that stays under that section are granted only 'under the usual rules for the issuance of an injunction.'" *Commonwealth Oil Ref. Co. v. U.S. EPA (In re Commonwealth Oil Ref. Co.)*, 805 F.2d 1175, 1188–89 (5th Cir.1986). The four prerequisites to the issuance of a preliminary injunction are:

(1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause the party opposing the injunction; and (4) that the granting of the injunction will not disserve the public.

*Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 765 (5th Cir.1995), *see also American Imaging Servs. Inc. v. Eagle–Picher Indus., Inc. (In re Eagle–Picher Indus., Inc.,)*, 963 F.2d 855, 858 (6th Cir. 1992). In applying this standard, "[i]t is important to recognize that the four considerations applicable to preliminary injunctions are factors to be balanced and not prerequisites that must be satisfied ... These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *Eagle–Picher* at 859.

■ As to the first factor, RTI is no longer operating. A sale of the majority of its assets has closed. Accordingly, on the undisputed facts of the matter now before the Court, initial focus on the third and fourth prongs is most appropriate. In doing so, it is also appropriate to note the developments in the main case since this adversary proceeding was filed. Despite RTI's intensive effort to develop a business plan that would permit it to emerge from its chapter 11 cases as an operating entity, the economic conditions in the U.S. steel industry in general resulted in management seeking a buyer or buyers for the operating assets as a going concern. As a result of those efforts, several smaller sales and one major sale of various components of RTI's numerous operations were

approved by the Court pursuant to 11 U.S.C. § 363(b). All of those sales had closed by last month. As a result of those transactions, approximately 2,600 individuals who had been employed by RTI are now employed by the purchasers, but over the course of the chapter 11 case, close to 2,000 RTI employees lost their jobs.

When one views the Maleys' pursuit of the individual defendants in their state court lawsuit against this backdrop, the harm that could ensue to managers who had the unenviable duty to inform individuals that their employment was being terminated becomes apparent. Still RTI initiated this adversary proceeding and is the movant. Now that it has ceased operations, one might ask what further potential irreparable harm to itself it could identify. The question must be viewed in the context of the principal-agent relationship of entities experiencing economic difficulties that may result in a chapter 11 filing. A corporate entity can only act through its officers and authorized employees. When a principal has directed an agent to take action on its behalf and the agent has done those acts within the scope of the agent's authority, failure of the principal to seek protection against claims of personal liability of the agent for those actions could lead to management paralysis. The Maleys seek to proceed with a statistically based lawsuit against management employees who themselves lost their jobs in the process of RTI's difficult efforts to survive in the harsh economic realities that have confronted the U.S. steel industry. At the time this adversary proceeding was commenced, RTI was continuing to evaluate what positions would have to be eliminated to create any chance of the overall operations continuing as a going concern.

The harm to the Maleys in enjoining pursuit of Knaga and Miller based upon the misreading of *Genaro* by the Maleys' counsel is greatly outweighed by the obligation that RTI owes to all of its management employees who have participated in the downsizing of its operations during the chapter 11 case. That is true not only because the Maleys' have little chance of succeeding in the state court action, but also because allowing the pursuit of that action would set the stage for any individual who is within a protected class and who lost employment during RTI's downward cycle to pursue the management employee who delivered the discharge notice or served as a supervisor.

Failure to enjoin the Maley lawsuit would likewise disserve the public. It is the harsh reality that, in companies struggling to survive, downsizing of the workforce can be critical. Failing to take such steps can doom any chance of survival for any part of the struggling entity. The timing and efficacy of such processes could be diluted if management employees charged with implementing such programs must fear the prospect of being a sole defendant in an indirect discrimination case.

## C. CONCLUSION

Based on the foregoing and pursuant to § 105, to the extent that the Maleys pursuit of the lawsuit against Knaga and Miller does not come within the ambit of § 362(a), this Court now stays the Maleys and the Maleys' counsel from proceeding in state court and orders that the Maleys and their attorneys are enjoined from proceeding in the state court action until further Order from this Court. The Maleys will be given 21 days from the entry of this Opinion and Order to show cause why that injunction should not continue for the du-

ration of RTI's bankruptcy proceeding.[9]

**IT IS SO ORDERED.**

**9.** The court will not deal at this time with the possibility of a violation of Fed. R. Bankr.P. 9011 or the issue of the willful violation of the automatic stay. However, the Court retains jurisdiction to deal with those issues at a later date.