Nancy FRANZ, Plaintiff,

v.

FIVE RIVERS METROPARKS, et al., Defendants.

No. C–3–01–027.

United States District Court, S.D. Ohio, Western Division.

Dec. 30, 2002.

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 20); JUDGMENT TO ENTER IN FAVOR OF ALL DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, Chief Judge.

Plaintiff Nancy Franz is an employee of Five Rivers MetroParks ("MetroParks"). She filed an Amended Complaint (Doc. # 2) against multiple Defendants for alleged sexual discrimination she encountered in her workplace, in violation of 42 U.S.C. §§ 1983, 1985 & 1988, and 42 U.S.C. § 2000e, *et seq.* ("Title VII"). She also stated a breach of contract claim. The gravamen of her Amended Complaint is that she was denied a promotion which she claims she deserved. In her prayer for relief, she seeks specific performance, by means of an order promoting her to the rank of sergeant, and back pay and attorney's fees. By Notation Order of June 18, 2001, the Court dismissed all but one of the Defendants, as well as the claims under Title VII, 42 U.S.C. §§ 1985 & 1988, and that for breach of contract. The sole remaining Defendant is Larry Jones, Chief Ranger of the MetroParks, who now moves for summary judgment. The sole remaining claim arises under § 1983. For the reasons which follow, Chief Jones' Motion for Summary Judgment (Doc. # 20) shall be sustained.

## I. *Factual Background* [1]

Franz was hired as a MetroParks ranger on September 19, 1988. (Franz Aff.,

---

1. For purposes of ruling on the Defendant's Motion for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in the light most favorable to the Plaintiff, who is the non-moving party. It will not, however, take into consideration the Plaintiff's conclusions of law couched as statements of fact. (*See, e.g.,* Franz Aff., attached to Pl.'s Resp. Memo. (Doc. # 22), ¶ 15) ("I further had been subjected to disciplinary action beyond other male employees ..."); (*id.* ¶ 23) ("I believe the department's explanation for denying my training request was pretextual"); (*id.* ¶ 24) ("My performance was evaluated more harshly than that of my similarly situated white male co-workers ...").

attached to Pl.'s Resp. Memo. (Doc. # 22), ¶ 2.) Although male MetroParks rangers had been permitted to attend the North Carolina Park Ranger Training Institute ("Ranger Training Institute"), Franz herself had been ordered to receive remedial training, on account of her purported failure to complete certain paperwork. (*Id.* ¶¶ 3, 4.) [2] A request she submitted for certain training was denied on account of its being, so she was told, irrelevant to her position, notwithstanding the fact that a male ranger of the same classification had his request for the same training granted. (*Id.* ¶¶ 22 & 23.) In October of 1998, Franz, along with six male rangers, applied for an open sergeant's position with MetroParks. (*Id.* ¶ 7.) As part of the interviewing process, four of the male applicants were permitted to participate in a study known as "The Devine Inventory System"; she was not. (*Id.* ¶ 8.) [3] On one particular written examination, Franz scored higher than another applicant, Gregory Stephens, but Stephens ultimately was hired into the position. (*Id.* ¶ 9.)

Throughout her employment at MetroParks, Franz received several written disciplinary warnings and memoranda stemming from issues of absenteeism, park visitor complaints, and falsification of her daily on-the-job log. (Jackson Aff., attached to Doc. # 20, ¶¶ 3, 4, 6 & 17; *id.* at Exs. A, B, D & I.) [4] In addition, her "overall" job performance ratings for the three years preceding the date on which MetroParks filled the first sergeant's position for which she applied were mediocre to average. MetroParks employees are rated on a five-level job performance assessment range at least once a year, pursuant to an end-of-year annual review, and sometimes twice, if they are given a mid-year review. The mid-year rating levels ascend from "unsatisfactory," to "needs improvement," to "meets expectations," to "exceeds expectations," and finally to "outstanding." In similar fashion, the annual review rating levels ascend from "unacceptable" to "below expectations" to "meets standards" to "exceeds standards," and finally to "outstanding."

**2.** Franz offers no specific time frame for when male rangers attended the Ranger Training Institute or when she was required to obtain remedial training. It also bears noting that her own resume demonstrates that she *did* attend the Ranger Training Institute in 1997 and 1998. (Doc. # 22 at Ex. 6.) As an additional matter, while she states that she is "aware" that another male ranger, Theodore Wilson III, was not required to attend remedial training despite discrepancies in the completion of his own paperwork, she does not state how she is aware of this purported fact. (Franz Aff. ¶ 6.) Accordingly, the Court accords this statement no weight, as it cannot be certain that the statement is not hearsay, which would not be admissible at trial. *See* Fed.R.Civ.P. 56(e). Likewise, the Court accords no weight to other statements Franz makes in her affidavit concerning statements made by others of which she merely "learned." (*E.g.,* Franz Aff. ¶¶ 11 & 12.) Rule 56(e) of the Federal Rules of Civil Procedure states clearly that "affidavits shall be made on personal knowledge, shall set forth

such facts *as would be admissible in evidence,* and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Finally, the meaning of some her affidavit statements are, unfortunately, indiscernible to the Court, and are, therefore, of little factual value. (*E.g., id.* ¶¶ 18 & 19.)

**3.** Franz has provided no further explanation of what this study was about, or how it is important and relevant to her claim. The most the Court can glean from an unauthenticated exhibit to Franz's Response brief is that MetroParks permitted the top four candidates for the position of sergeant to take part in this study, and that she was not among this group. (Doc. # 22 at Ex. 8.) In the absence of an explanation of its relevance, the fact that she was not permitted to participate in this study is of little value.

**4.** Deborah Jackson is the MetroParks Human Resources Director, and custodian of its personnel files. (Jackson Aff. ¶¶ 1 & 2.)

Franz's "overall" job performance rating on her 1996 annual review was "meets standards." (Jackson Aff. ¶ 13.) Her "overall" rating on her 1997 mid-year review was "needs improvement." (*Id.* ¶ 13 & Ex. C.) Her "overall" rating on her 1997 annual review was again "meets standards." (*Id.* ¶ 13 & Ex. E.) Finally, her "overall" rating on her 1998 annual review was also "meets standards." (*Id.* ¶ 13 & Ex. F.) By comparison, Stephens and another ranger who was ultimately promoted to a second sergeant's position at the same time, Mark Arendt, both received "overall" ratings of "exceeds expectations" or "exceeds standards" on their mid-year and annual year-end reviews in 1996, 1997 & 1998. (*Id.* ¶ 13.)

On a multiple-choice examination administered by an independent consulting firm from Cincinnati in January, 1999, Franz scored third out of seven applicants for the ranger position, with a score of 88%. (*Id.* ¶¶ 11, 12 & Ex. H.)[5] Arendt scored the highest of the seven applicants, at 97%, while Stephens scored fourth, with a score of 77%. (*Id.* at Ex. H.)

Seven law enforcement officers comprised the panel of interviewers which interviewed the seven applicants for the ranger position: Anthony Rankin, Chief Deputy, Montgomery County Sheriff's Department; Daniel Hobbs, Captain, Montgomery County Sheriff's Department; Robert Makely, Ranger Lieutenant, MetroParks; Andrea Jensen, Park Manager, MetroParks; Larry Head, Ranger Lieutenant, MetroParks; Larry Jones, Chief Ranger, MetroParks; Charles Jackson, Ranger Lieutenant, MetroParks. (*Id.* ¶ 15.) Franz was rated "7" out of the seven applicants by every interviewer. (*Id.* ¶ 16.) Arendt was rated "1" by six of the interviewers, and "2" by the seventh.

(*Id.*) Stephens was rated "2" by three of the interviewers, "3" by three others, and "6" by the seventh. (*Id.*) Ultimately, Stephens and Arendt were promoted to the rank of sergeant in May, 1999. (*Id.* ¶ 10.)

On her 1999 mid-year job performance review, Franz received an "overall" rating of "needs improvement." (*Id.* at Ex. J.) In September of 1999, Franz was directed to attend four weeks of remedial training to address purported problems with her radio skills, writing skills, and paperwork filing skills. (*Id.* ¶ 19 & Ex. K.) In May of 2000, another sergeant's position opened up, the basic qualifications for which were listed as (1) three years of MetroParks experience, (2) a high school diploma or GED, (2) no disciplinary action within the preceding year, and (4) no overall rating of "below standards" on a year-end review during the preceding three years. (*Id.* ¶ 20 & Ex. L.) The same independent consulting firm which had evaluated applicants for the two previous ranger openings was again retained for purposes of evaluating applicants for this opening. (*Id.*) Five individuals, consisting of two males and three females, applied for the position, including Franz. (*Id.* ¶ 22 & Ex. M.) Franz was rated "4" out of the five applicants, and, in August of that year, the job was ultimately given to the individual who had been rated the highest by the consulting firm, Pamela Wightman, a female. (*Id.*) When another ranger position opened in January of 2001, it was given to the individual who had ranked second in the previous evaluation, Monnie Bush, a male. (*Id.* ¶¶ 22 & 24.)

## II. Standards Governing Motions for Summary Judgment

Summary judgment must be entered "against a party who fails to make a show-

---

[5]. This multiple choice examination is referred to as a "written examination," and it is reasonable to think that this is the same written examination to which Franz refers in her own affidavit.

ing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v.*

*J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles A.

Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## III.  *Analysis*

■ Before the Court undertakes its analysis of the merits of Franz's § 1983 claim, it must make clear what is not at issue in this case. As Chief Jones points out in his Reply brief (Doc. # 23), Franz raises a number of issues in her Response brief which are clearly outside the scope of her pleadings. First and foremost, the Court must note its confusion with her section heading "Liability as to Chief Mi-

chael Etter," stated on page 4 of her Response brief, as the Court knows not of any involvement of a Chief Michael Etter in this case. In any event, at this time, Chief Jones is the lone Defendant. Turning to actual substantive arguments, at page 6 of her Response brief, she argues that she can state a claim of *race* discrimination under Title VII. This is impermissible, not only because her Title VII claim has been dismissed in its entirety, as noted above, but also because she did not state any such claim in her Amended Complaint. For the identical reason, her argument touching upon a harassment claim under Title VII, stated for the first time at page 5 of her brief, is without merit. Again putting aside the fact that her Title VII claim has been dismissed, discrimination claims and workplace harassment claims (e.g., hostile work environment claims) are two distinct types of claims. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Because Franz did not plead a harassment claim, her arguments on the point at this juncture would be unfounded even if the Title VII claim had not already been dismissed.

■ Likewise, at page 11 of her Response brief, she sets forth a legal argument concerning Chapter 4112 of the Ohio Revised Code. While the substantive components of Chapter 4112 often overlap those of Title VII, *see Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St.2d 192, 421 N.E.2d 128 (1981), she again did not state any such claim in her Amended Complaint, and it will not be recognized at this juncture.[6] Finally, and by the same

---

**6.** The most she suggested in her Amended Complaint is that her employment contract was subject to the laws of Ohio and that MetroParks violated these laws when they discriminated against her on the basis of her sex. (Amend.Compl.¶ 20.) However broadly this

pleading could have been interpreted at the initiation of this action, the facts at present are that Chief Jones is the only Defendant remaining in this case and he is not her employer. In any event, as noted, her breach of contract claim has been dismissed.

token, the Court will not address her argument on her suggested claim for negligent hiring and retention, as argued at page 15 of her brief. As with the other claims raised for the first time in her Response brief, no such claim was stated in her Amended Complaint. In addition, Chief Jones, the sole remaining Defendant, is not her employer, and therefore is not a proper defendant to any such claim in any event. (For this same reason, Franz's arguments on the issue of "employer liability" under Title VII are moot.) (*See, e.g.,* Doc. # 22 at 5.) [7]

■ At issue is whether Chief Jones can be held liable under § 1983. Strangely, Franz did not even touch upon this area of law in her Response brief. Instead, she focused exclusively on various Title VII theories of discrimination. Unfortunately, her efforts in this regard are for naught. *First,* the Title VII claim has been dismissed.[8] *Second,* even if it had not been dismissed as to Chief Jones, a claim under Title VII, which makes it illegal for an employer to discriminate against employees on the basis of, among other factors, sex (or gender), cannot lie as to individual managers. *See Wathen v. General Elec. Co.,* 115 F.3d 400, 405 (6th Cir.1997).

Turning to 42 U.S.C. § 1983, that statute provides a civil cause of action to any citizen of the United States against any person who, under color of state law, deprives the citizen of "any rights, privileges, or immunities secured by the Constitution and laws of the United States." *See Christy v. Randlett,* 932 F.2d 502, 504 (6th Cir.1991) (citations omitted). In order to succeed on a § 1983 claim, a plaintiff must prove two elements: (1) that he was deprived of a right secured by the Federal Constitution or laws of the United States; and (2) that he was subjected to this deprivation by a person acting under the color of state law. *See Searcy v. City of Dayton* 38 F.3d 282, 286 (6th Cir.1994). "By its terms, § 1983 creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere." *Gardenhire v. Schubert,* 205 F.3d 303, 310 (6th Cir.2000) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)).

■ Where the alleged § 1983 violation stems from an act of workplace discrimination, the standard of analysis tracks that used in Title VII cases. *See Boutros v. Canton Regional Transit Authority,* 997 F.2d 198, 202 (6th Cir.1993). In the absence of direct evidence of sex-based discrimination, which Franz has not offered, her initial burden is to point to evidence giving rise to a prima facie showing of such discrimination. *See id.* at 203, 997 F.2d 198; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To demonstrate a prima facie case of discrimination in the failure to promote context, she must demonstrate (1) membership in a protected class; (2) that she suffered an adverse action (i.e., was not promoted despite her application); (3) that she was qualified for the position; and (4) that someone similarly situated but outside the protected class

---

**7.** Under Chapter 4112 of the Ohio Revised Code, a manager can be held liable qua employer under certain circumstances. *See Genaro v. Central Transport, Inc.,* 84 Ohio St.3d 293, 703 N.E.2d 782, 785 (1999). Because Franz has not pled a claim under this Ohio law, this point is purely academic.

**8.** As the Defendants pointed out in their Motion to Dismiss (Doc. # 3), while Franz did in fact file an administrative claim with the Ohio Civil Rights Commission, as one is required to do under Title VII before bringing a discrimination claim in court, she did not raise the failure-to-promote issue. (Doc. # 3 at Ex. C.) Accordingly, her Title VII claim had to be dismissed on the ground that she failed to exhaust her administrative remedies.

was offered the position. *See, e.g., Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 731 (6th Cir.2000).

■ Franz has no trouble making out her prima facie case of discrimination: she is female, she was not promoted to the position of sergeant despite her application for several openings, she possessed the bare minimum credentials for the job (as set forth above in the Factual Background portion of this Decision and Entry), and male MetroParks rangers were so hired to the position of sergeant. Chief Jones argues that Franz's prima facie showing fails at the third and fourth prongs, as they are set out above. The Court disagrees.

■ *First,* to show she was qualified, pursuant to the third prong, Franz need only demonstrate she met the basic criteria established by MetroParks. *See, e.g., Brown v. Tennessee*, 693 F.2d 600, 603 n. 5 (6th Cir.1982) (plaintiff's proof must only support "the conclusion that the plaintiff was qualified according to the legitimate criteria disseminated by the company or as found by the district court"). She has done this, if by nothing else than by demonstrating that she was considered for the position on several occasions beyond the mere application stage (actually, and ironically, it is Chief Jones' evidence which establishes this, not that of Franz). She need not show *at the prima facie stage* that her qualifications were "demonstrably better" than others applying for the job. Such a position has been expressly rejected by the Sixth Circuit on at least two occasions. *See Gafford v. General Elec. Co.*, 997 F.2d 150, 167, n. 9 (6th Cir.1993); *Mitchell v. Baldrige*, 759 F.2d 80, 84–85 n. 3 (6th Cir.1985). Indeed, the *Gafford* court found that the district judge had committed error by instructing the jury that an element of the prima facie case was a finding that the defendant had "hired a person with lesser qualifications" than the plaintiff. 997 F.2d at 167 n. 9.

■ *Second,* along the same lines, the Court disagrees with Chief Jones that, *for purposes of making out her prima facie case,* Franz has not shown that she was similarly situated to the other rangers who applied for the sergeant's position. At the prima facie stage, a plaintiff need only show that others in her same job classification, but outside the protected class, were treated more favorably. While it may be true, indeed is true in this case, that other applicants were more qualified than Franz for the position of sergeant, because Franz disputes this fact, it is not something for the Court to consider at the prima facie stage of the *McDonnell Douglas* test. To entertain the merits of the employer's legitimate, non-discriminatory justifications at the prima facie stage would potentially require Franz to advance at that juncture her third stage rebuttal argument, thus defeating the role of the tripartite analysis engendered by *McDonnell Douglas*. *See, e.g., Bush v. American Honda Motor Co., Inc.*, 227 F.Supp.2d 780, 791–794 & n. 12 (S.D.Ohio 2002). The plaintiff's burden at the prima facie stage is not intended to be strenuous. *See, e.g., Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 146 (2d Cir. 1999).

Where an employee makes a prima facie showing of discrimination, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the alleged discriminatory action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. "If the employer carries this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. The ultimate burden of persuasion remains at all times with the plaintiff." *Newman v. Federal Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001) (citations and internal quotations omitted).

Franz's case must fail because she has not adduced *any* evidence to rebut the overwhelming evidence adduced by Metro-Parks and Chief Jones that other, more qualified individuals, were hired into the various sergeant openings. The Court need not go over the facts again, for they speak for themselves. While Franz has no doubt been a dutiful MetroParks ranger for a number of years, her record vis-a-vis that of others demonstrates that she was not as qualified as some others for the position of sergeant, for which she applied on several occasions. She has not offered any evidence, other than her inadmissible, speculative hypotheses, that she was the target of sex-based discrimination. Nor has she adduced any evidence rebutting the veracity of those facts adduced by Chief Jones. What is more, she has not adduced any evidence demonstrating how Chief Jones himself played any significant and material role in the decision-making process leading to the filling of the various job openings she sought.

The Court is not persuaded by Franz's argument that her history of reprimands and warnings from supervisors at work is further evidence that she was treated differently. Indeed, that theory deprecates an honest employer's most legitimate means of demonstrating that its business decisions were honestly and fairly undertaken; it would make an employer damned if it did keep a personnel file and damned if it did not. If Franz intended to present an argument that MetroParks did not keep records on other, equally transgressive employees, it was incumbent upon her to adduce evidence of such, as gathered through the discovery process. She did not do this.

No individual is entitled under federal law to a promotion for which he or she is not the most qualified candidate, and this Court will not second guess what appear to be perfectly legitimate hiring and pro-motion decisions made by MetroParks; such is not its role.

Accordingly, Defendant's Motion for Summary Judgment is SUSTAINED.

## IV. *Conclusion*

For the reasons and citations of authority cited above, the Defendant's Motion for Summary Judgment (Doc. # 20) is SUSTAINED.

Judgment is hereby ordered entered in favor of all the Defendants and against the Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.