GENARO *v.* CENTRAL TRANSPORT, INC. ET AL.

BALDWIN ET AL. *v.* FUTURE ELECTRONICS ET AL.

GREER *v.* BALLY TOTAL FITNESS ET AL.

[Cite as *Genaro v. Cent. Transport, Inc.* (1999), 84 Ohio St.3d 293.]

(No. 97–1595—Submitted September 15, 1998—Decided January 13, 1999.)

*Lancione & Simon, P.L.L., Ellen S. Simon* and *Christopher P. Thorman,* for petitioner Michael J. Genaro, Sr.

*Sindell, Young & Guidubaldi* and *Steven A. Sindell,* for petitioners Susan Baldwin, Katrina M. Brill, and Colleen Lynn Kulka.

*Reminger & Reminger Co., L.P.A.,* and *Joy B. Sonnhalter,* for petitioner Kim Greer.

*Duvin, Cahn & Hutton, Lee J. Hutton* and *Michael T. Pearson,* for respondents Central Transport, Inc., Central Cartage Company, and Alan Bassetti.

*Vorys, Sater, Seymour & Pease, Sandra J. Anderson, Julia A. Davis* and *David A. Campbell; Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Kenneth M. Bello* and *Keith Wexelblatt,* for respondents Future Electronics, Inc. and Bonita Russell.

*Duvin, Cahn & Hutton, Richard C. Hubbard III, Suellen Oswald* and *Mark F. Humenik,* for respondents Bally Total Fitness and Charles Comparato.

*Spater, Gittes, Schulte & Kolman, Frederick M. Gittes* and *Michael S. Kolman;* and *Louis Jacobs,* in support of petitioners for *amici curiae,* Ohio Employment Lawyers Association et al.

*Manley, Burke, Lipton & Cook* and *Robert H. Mitchell*, in support of petitioners for *amicus curiae*, Ohio Academy of Trial Lawyers.

*Cooper, Walinski & Cramer, Cary R. Cooper* and *Terrell A. Allen; Jenner & Block, Richard C. Bollow, Kenneth R. Dolin* and *Christine E. Kessler*, in support of respondents for *amici curiae*, Tenneco Automotive, Inc. et al.

*Porter, Wright, Morris & Arthur, Charles C. Warner, David A. Bell* and *Margaret M. Koesel*, in support of respondents for *amicus curiae*, Ohio Association of Civil Trial Attorneys.

*Porter, Wright, Morris & Arthur, Kevin E. Griffith* and *Denise M. Johnson*, in support of respondents for *amicus curiae*, Huntington National Bank; and *Jeffrey Quayle*, in support of respondents for *amicus curiae*, Ohio Bankers Association.

---

DOUGLAS, J. The United States District Court for the Northern District of Ohio, Eastern Division, has certified the following question to this court for our determination:

"For purposes of Ohio Rev.Code Ann. [Chapter] 4112, may a supervisor/manager be held jointly and/or severally liable with his employer for his conduct in violation of [R.C. Chapter] 4112?"

With respect to this question, the district court issued the following findings:

"The Ohio Supreme Court has ruled that federal case law interpreting and applying Title VII is generally applicable to cases involving [R.C. Chapter] 4112. *Ohio Civil Rights Comm'n v. Ingram*, (1994) 69 Ohio St.[3d 89, 93, 630 N.E.2d 669, 672]; *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, (1981), 66 Ohio St.2d 192, 196 [20 O.O.3d 200, 202–203, 421 N.E.2d 128, 131].

"The Sixth Circuit has determined that an individual employee/supervisor may not be held personally liable under Title VII. *Wathen v. General Electric Co.*, [C.A.6, 1997], 115 F.3d 400.

"Federal courts in the Northern District of Ohio have addressed the issue of supervisor liability under both Title VII and [R.C. Chapter] 4112 and have determined that neither Title VII nor [R.C. Chapter] 4112 provide[s] for claims against supervisors in their individual capacity. The Courts determined that the reasoning behind precluding individual capacity suits under Title VII applies equally to preclude such suits under [R.C. Chapter] 4112. The agent provision in the statutory definition of employer in Title VII only ensures that employers cannot escape respondeat superior or agency liability. Likewise, [R.C. Chapter] 4112's definition of employer including 'any person acting directly or indirectly in the interest of an employer,' instead of the term 'agent' is meant only to ensure

that employers cannot escape respondeat superior or agency liability. *Czupih v. Card Pak, Inc.* [N.D.Ohio 1996], 916 F.Supp. 687; *Gausmann v. City of Ashland* [N.D.Ohio 1996], 926 F.Supp. 635. *But see DeLoach v. American Red Cross* [N.D.Ohio 1997, 967 F.Supp. 265] * * *; *Griswold v. Fresenius USA, Inc.* [N.D.Ohio 1997, 964 F.Supp. 1166] * * *.

"Absent a contrary ruling by the Ohio Supreme Court, the Court finds that [R.C. Chapter] 4112, like Title VII, does not provide for claims against supervisors in their individual capacities."

The question of state law certified by the district court presupposes employer liability. Considering the question as it arose in the context of the underlying litigation, the issue before the court may be more directly phrased as whether supervisors and managers are named proper party defendants for claims brought pursuant to R.C. Chapter 4112? In other words, may supervisors and managers be held personally liable for unlawful discriminatory acts committed by such persons in violation of R.C. Chapter 4112?

For the reasons that follow, we answer the certified question in the affirmative.

Petitioners argue that the plain language of R.C. Chapter 4112 imposes individual liability on managers and supervisors for their discriminatory conduct found to be in violation of R.C. Chapter 4112. We agree.

R.C. 4112.02 provides that "[i]t shall be an unlawful discriminatory practice: (A) [f]or any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, * * * to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.01(A)(2) defines "employer" as "any person employing four or more persons within the state, and *any person acting directly or indirectly in the interest of an employer.*" (Emphasis added.) Further, the term "person" is defined very broadly by R.C. 4112.01(A)(1) as including "one or more individuals, * * * any owner, lessor, assignor, * * * agent, [and] employee." It is clear that the R.C. 4112.01(A)(2) definition of "employer," by its very terms, encompasses individual supervisors and managers whose conduct violates the provisions of R.C. Chapter 4112.

Moreover, R.C. 4112.08 mandates that "[t]his chapter [4112] shall be construed liberally for the accomplishment of its purposes * * *." This court has noted in numerous cases the existence of a strong public policy against discrimination. A majority of this court have, time and time again, found that there is no place in this state for any sort of discrimination no matter its size, shape, or form or in what clothes it might masquerade. This, of course, includes discrimination in the workplace. For instance in *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 133, 543 N.E.2d 1212, 1215, we stated that "there appears to be

little question that R.C. Chapter 4112 is comprehensive legislation designed to provide a wide variety of remedies for employment discrimination in its various forms." See, also, *Kerans v. Porter Paint Co.* (1991), 61 Ohio St.3d 486, 575 N.E.2d 428, and *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 652 N.E.2d 653, indicating that Ohio's statutory framework and case law reflect Ohio's strong public policy against workplace discrimination. By holding supervisors and managers individually liable for their discriminatory actions, the antidiscrimination purposes of R.C. Chapter 4112 are facilitated, thereby furthering the public policy goals of this state regarding workplace discrimination.

Further, while this court has not previously spoken on this issue, three decisions from courts of appeals of this state have held that liability may be imposed against supervisors and managers in their individual capacity for conduct in violation of R.C. Chapter 4112. See *Davis v. Black* (1991), 70 Ohio App.3d 359, 370, 591 N.E.2d 11, 19 ("Clearly, the supervisor for whom an employer may be vicariously liable under the doctrine of *respondeat superior* is also an employer within this definition [R.C. 4112.01(A)(2) ]."); *Seiber v. Wilder* (Oct. 12, 1994), Greene App. No. 94CA32, unreported, 1994 WL 558969 (individual supervisor defendants were not entitled to summary judgment because "[t]he definition of 'employer' in R.C. 4112.01(A)(2) has been construed to include supervisors," citing *Davis,* 70 Ohio App.3d at 370, 591 N.E.2d at 19); and *Cisneros v. Birck* (Apr. 11, 1995), Franklin App. No. 94APE08–1255, unreported, 1995 WL 222156 (individual liability could exist against defendant in his individual capacity, where defendant, who was essentially a one-man corporation, was also considered an employer under R.C. 4112.01[A][2] by acting directly or indirectly in the interest of his own corporation).

It is well settled that "[a] Federal Court should not disregard the decisions of intermediate appellate state courts unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Garraway v. Diversified Material Handling, Inc.* (N.D.Ohio 1997), 975 F.Supp. 1026, 1030, citing *Commr. of Internal Revenue v. Estate of Bosch* (1967), 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886, 893. The "persuasive data" that the district court relied upon, and which respondents have set forth as part of their arguments, can be readily distinguished.

The district court, in its certification order, cited *Ohio Civ. Rights Comm. v. David Richard Ingram, D.C., Inc.* (1994), 69 Ohio St.3d 89, 630 N.E.2d 669, and *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128, for the proposition that the Supreme Court of Ohio has ruled that federal case law interpreting and applying Title VII is *generally* applicable to cases involving R.C. Chapter 4112.

In *Plumbers*, the court considered whether the court of appeals erred in concluding that the findings of the Ohio Civil Rights Commission were not supported by reliable, probative, and substantial evidence as required by R.C. 4112.05(G). In relying on federal case law in *Plumbers*, the court reasoned that the phrase "reliable, probative, and substantial evidence" was *not* defined by R.C. Chapter 4112. *Id.* at 196, 20 O.O.3d at 202–203, 421 N.E.2d at 131. The reverse implication is, of course, that in an action where the statutory terms at issue are defined by R.C. Chapter 4112, as in the instant case, it would not be necessary to resort to federal case law interpretation of Title VII to construe an analogous R.C. Chapter 4112 provision.

In *Ingram*, the court cited *Plumbers* as well as *State ex rel. Republic Steel Corp. v. Ohio Civ. Rights Comm.* (1975), 44 Ohio St.2d 178, 73 O.O.2d 478, 339 N.E.2d 658, in support of the proposition that Title VII case law is generally applicable to cases involving violations of R.C. Chapter 4112. *Ingram*, 69 Ohio St.3d at 92–93, 630 N.E.2d at 672. The issue in *Republic Steel* involved an interpretation of former R.C. 4112.05(B)[3] concerning whether efforts to resolve alleged discriminatory practices by conciliation were a jurisdictional prerequisite to the proper issuance of a complaint by the Ohio Civil Rights Commission. The court applied federal case law interpreting Title VII in *Republic Steel* and in so doing reasoned that because Title VII contained a provision[4] analogous to R.C. 4112.05(B), which "employ[ed] mandatory language *identical* to R.C. 4112.05(B)," it is proper to apply the rationale of those cases interpreting Title VII to R.C. 4112.05(B). (Emphasis added.) *Republic Steel*, 44 Ohio St.2d at 182–184, 73 O.O.2d at 480–481, 339 N.E.2d at 661–662. Unlike the situation in *Republic Steel*, the dispositive issue in the present action, R.C. 4112.01(A)(2)'s definition of "employer" is markedly different from the analogous Title VII provision.

As previously set forth herein, R.C. 4112.01(A)(2) defines "employer" as "any person employing four or more persons within the state, * * * and *any person*

---

3. Former R.C. 4112.05(B) is substantially similar to its current version (R.C. 4112.05[B][4] ), and provided in pertinent part that "[w]henever it is charged * * * that any person * * * has engaged or is engaging in unlawful discriminatory practices, * * * the commission may initiate a preliminary investigation. * * * If it determines after such investigation that it is probable that unlawful discriminatory practices have been or are being engaged in, it shall endeavor to eliminate such practices by informal methods of conference, conciliation, and persuasion." (135 Ohio Laws, Part I, 1892–1893.)

4. Section 2000e–5(b), Title 42, U.S.Code provides in part that "[w]henever a charge is filed by or on behalf of a person claiming to be aggrieved * * * alleging that an employer * * * has engaged in an unlawful employment practice, the Commission * * * shall make an investigation thereof. * * * If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. * * * "

*acting directly or indirectly in the interest of an employer.*" (Emphasis added.) In contrast, under Title VII, "employer" is defined as "a person engaged in an industry affecting commerce who has *fifteen or more employees * * * and any agent of such a person.*" (Emphasis added.) Section 2000e(b), Title 42, U.S. Code. The differing numerosity requirements and uses of agency terminology indicate that Title VII's definition of "employer" is far less reaching than the encompassing language of R.C. 4112.01(A)(2). Without doubt, the language employed by the General Assembly with regard to R.C. 4112.01(A)(2) is much broader in scope than that employed by the analogous Title VII provision.

The certifying district court and the respondents rely heavily on *Wathen v. Gen. Elec. Co.* (C.A.6, 1997), 115 F.3d 400. *Wathen* involved various claims of sexual harassment in violation of Title VII and Kentucky Revised Statutes Chapter 344, the Kentucky Civil Rights Act, against General Electric Company and three individual employees in their official and individual capacities. The Sixth Circuit Court of Appeals held that an individual employee/supervisor may not be held personally liable under Title VII absent meeting the definitional requirement of "employer" as defined by Section 2000e(b), Title 42, U.S. Code. The court of appeals further concluded that "[b]ecause KRS Chapter 344 mirrors Title VII," individual employees/supervisors were not individually liable under Kentucky state law. *Id.* at 405.

*Wathen* is inapplicable to the instant action. The definitions of "employer" under Title VII and the Kentucky Civil Rights Act are essentially identical.[5] As we have seen, the statutory definition of "employer" found in R.C. 4112.01(A)(2) differs in several critical aspects from its Title VII counterpart. Moreover, unlike R.C. Chapter 4112, the Kentucky statute was modeled after, and is virtually identical to, Title VII. Consequently, Kentucky courts have consistently followed federal law in interpreting its antidiscrimination statute. See *Kentucky Comm. on Human Rights v. Commonwealth, Dept. of Justice, Bur. of State Police* (Ky.App.1979), 586 S.W.2d 270, 271 (The Kentucky statute [Kentucky Rev. Statute 344.040] is virtually identical to the corresponding section of Title VII and therefore United States Supreme Court decisions regarding the federal provision are "most persuasive, *if not controlling,* in interpreting the Kentucky statute.") (Emphasis added.); and *Harker v. Fed. Land Bank of Louisville* (Ky.1984), 679 S.W.2d 226, 229 ("The Kentucky age discrimination statute is specially modeled after the Federal law. Consequently, in this particular area we must consider the way the Federal act has been interpreted."). Federal case law clearly has a

---

5. Pursuant to Ky.Rev.Stat.Ann 344.030(2), "employer" is defined as including "a person who has engaged in an industry affecting commerce who has fifteen (15) or more employees * * * and any agent of that person."

greater controlling effect interpreting Kentucky's antidiscrimination statute than it does in regard to R.C. Chapter 4112.

Based on the foregoing, we believe that the clear and unambiguous language of R.C. 4112.01(A)(1) and (A)(2), as well as the salutary antidiscrimination purposes of R.C. Chapter 4112, and this court's pronouncements in cases involving workplace discrimination, all evidence that individual supervisors and managers are accountable for their own discriminatory conduct occurring in the workplace environment. Accordingly, we answer the certified question in the affirmative and hold that for purposes of R.C. Chapter 4112, a supervisor/manager may be held jointly and/or severally liable with her/his employer for discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112.

*Judgment accordingly.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

———

**MOYER, C.J., dissenting.** I respectfully dissent from the majority opinion because I cannot agree that R.C. Chapter 4112 imposes liability on managers and supervisors. Several clauses in this chapter of the Revised Code indicate that the General Assembly did not intend to create liability for supervisors and managers. When analyzing the meaning of a statute, the court should give the words of the statute their plain and ordinary meaning unless the legislative intent indicates otherwise. *Coventry Towers, Inc. v. Strongsville* (1985), 18 Ohio St.3d 120, 122, 18 OBR 151, 152, 480 N.E.2d 412, 414. Applying this principle to R.C. Chapter 4112, it is clear that the statute does not impose liability upon supervisors and managers.

R.C. Chapter 4112 is Ohio's antidiscrimination statute. Unlawful discriminatory practices are defined as follows:

"It shall be an unlawful discriminatory practice:

"(A) For any *employer*, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person." (Emphasis added.) R.C. 4112.02.

This section clearly imposes liability upon employers for discriminatory practices ·in the workplace. However, the statute conspicuously fails to include a provision imposing liability upon employees who participate in discriminatory practices. The majority asserts that the public policy against discrimination supports its argument that R.C. Chapter 4112 should be construed to impose

liability on supervisors and managers. However, when the language of a statute is clear and unambiguous, it is the duty of the court to apply the statute as written, making neither additions to the statute nor deletions therefrom. *Dougherty v. Torrence* (1982), 2 Ohio St.3d 69, 70, 2 OBR 625, 626, 442 N.E.2d 1295, 1296; *Bernardini v. Conneaut Area City School Dist. Bd. of Edn.* (1979), 58 Ohio St.2d 1, 4, 12 O.O.3d 1, 3, 387 N.E.2d 1222, 1224; *Wheeling Steel Corp. v. Porterfield* (1970), 24 Ohio St.2d 24, 28, 53 O.O.2d 13, 15, 263 N.E.2d 249, 251. Applying this principle of statutory interpretation to R.C. Chapter 4112 causes me to conclude that this court should not expand the liability imposed under R.C. 4112.02 to individual employees. Had the General Assembly wished to extend individual liability to managerial personnel it could have easily included the word "employee" in R.C. 4112.02(A).

Petitioners argue that supervisors and managers should be considered employers under the definition of "employer" contained in R.C. 4112.01(A)(2). That section reads as follows:

"(2) 'Employer' includes the state, any political subdivision of the state, any person employing four or more persons within the state, *and any person acting directly or indirectly in the interest of an employer.*" (Emphasis added.)

Petitioner's argument that managerial personnel should be considered "employers" under this section fails for several reasons. First, petitioners contend that the phrase "and any person acting directly or indirectly in the interest of an employer" should be read to include managerial personnel in the definition of "employer." However, this phrase was more likely included in R.C. 4112.01 in order to impose vicarious liability on employers for discriminatory acts of their employees. This court has previously stated that federal case law interpreting Title VII is generally applicable to interpretations of R.C. Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 202, 421 N.E.2d 128, 131. Title VII is the federal antidiscrimination statute. Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees * * * *and any agent of such a person.*" (Emphasis added.) Section 2000e(b), Title 42, U.S.Code.

Numerous federal courts have held that the agency clause of Title VII does not impose liability on individual employees, but instead imposes vicarious liability on employers for the discriminatory acts of their employees. See *Miller v. Maxwell's Internatl., Inc.* (C.A.9, 1993), 991 F.2d 583; *Gary v. Long* (C.A.D.C.1995), 59 F.3d 1391; *Wathen v. Gen. Elec. Co.* (C.A.6, 1997), 115 F.3d 400. While R.C. Chapter 4112 and Title VII contain slightly different language, the language of both statutes indicates an intent to hold employers vicariously liable for the discriminatory acts of their employees.

In *Lenhardt v. Basic Inst. of Technology, Inc.* (C.A.8, 1995), 55 F.3d 377, 379, the court of appeals held that Missouri's antidiscrimination statute did not impose liability on individual employees. The Missouri antidiscrimination statute contains a definition of "employer" that is similar to that contained in R.C. Chapter 4112. The Missouri statute reads:

" 'Employer' includes the state, or any political subdivision thereof, or any person employing six or more persons within the state, *and any person directly acting in the interest of an employer * * *.*" (Emphasis added.) Mo.Rev.Stat. 213.010(6) (1994).

In *Lenhardt,* the court of appeals determined that this language was not meant to impose liability on managers and supervisors, but was instead meant to create vicarious liability for employers whose employees commit violations of the statute.

The majority refers to minor differences between the definitions of "employer" found in Title VII and R.C. 4112(A)(2), stating that these differences clearly broaden the scope of liability imposed under R.C. Chapter 4112. In emphasizing the differences between Title VII and R.C. Chapter 4112, the majority criticizes respondent's reliance on *Wathen.* *Wathen* involved sexual harassment claims in violation of Title VII and the Kentucky Civil Rights Act. In *Wathen,* the court of appeals held that Title VII and the Kentucky Civil Rights Act were analogous. Here, the majority opinion correctly points out that Title VII and the Kentucky statute are almost identical, unlike Title VII and R.C. Chapter 4112. For this reason, the majority finds that *Wathen* is not controlling. However, as the court of appeals concluded in *Lenhardt,* the agency clause in Title VII and the phrases "any person directly acting" and "any person acting directly or indirectly" contained in the Missouri civil rights statute and R.C. 4112.01(A)(2), respectively, are sufficiently similar to warrant the conclusion that both were meant only to impose vicarious liability on employers for the acts of their employees.

The majority also relies on the fact that Title VII defines "employer" to include "a person engaged in an industry affecting commerce *who has fifteen or more employees,*" while R.C. 4112.01(A)(2) includes "any person *employing four or more persons* within the state." The majority's contention is that the lower numerosity requirement included in R.C. 4112.01 obviously was meant to broaden the scope of liability under R.C. Chapter 4112 to include individual employees. However, this reasoning is flawed, in that it precludes liability under R.C. Chapter 4112 for employers with fewer than four employees, while imposing liability on supervisors overseeing the activities of as few as one employee. This clearly cannot be what the General Assembly intended when it enacted R.C. Chapter 4112.

R.C. 1.47 is intended to assist courts in applying statutes to the facts of a specific case. It reads:

"In enacting a statute, it is presumed that: .

" * * *

"(C) A just and reasonable result is intended[.]"

Application of R.C. 1.47 to the issue here does not support the majority decision. By imposing liability upon supervisors and managers for violations of R.C. Chapter 4112, the majority exposes virtually all managerial employees to the risk that they will be forced to bear the cost of defending themselves in claims alleging violations of R.C. Chapter 4112.

Taking into account the fact that R.C. Chapter 4112 fails to include the term "employee" in the clause prohibiting unlawful discriminatory practices, and the applicable case law interpreting Title VII, R.C. Chapter 4112, and other state antidiscrimination statutes, I conclude that the General Assembly did not intend to impose liability on managerial personnel when it enacted R.C. Chapter 4112. I would affirm the original decision of the district court.

COOK and LUNDBERG STRATTON, JJ., concur in the foregoing dissenting opinion.

---

COOK, J., dissenting. I agree with Chief Justice Moyer's dissenting opinion. I write separately to further support the position that R.C. Chapter 4112 imposes liability on employers only, not on employees.

R.C. 4112.02(A) prohibits Ohio *employers* from discriminating against current or prospective employees. The statutory language does not similarly speak to liability of *employees*. Instead, the statutory definition of "employer" "*includes* * * *" any person acting directly or indirectly in the interest of an employer," see R.C. 4112.01(A)(2), thereby framing an *employer's* accountability as comprising both direct and vicarious liability.

The same statutory phrase cannot simultaneously mean to impose both individual liability on employees and vicarious liability on employers. If the phrase at issue is construed as the majority suggests, then there is no provision in R.C. Chapter 4112 for vicarious liability of an employer.

The majority rationale centers on a rudimentary syllogism that goes like this: "persons" acting directly or indirectly in the interest of employers are "employers"; all "employees" are "persons"; therefore, *employees* are "employers" and thus liable to pay damages to a fellow employee for discriminatory conduct. This analysis holds that "persons" are individually liable though the General Assembly did not expressly prohibit "persons" from engaging in discriminatory employment practices, just "employers." See R.C. 4112.02(A).

Moreover, the majority abandons its language-based reasoning when it decides that only managerial employees are subject to individual liability. Its syllogism

envelops all employees, not just supervisory employees. To limit employee liability to managers necessitates that the majority superimpose a qualifying word, "supervisory," on R.C. 4112.01(A)(2). But because the statute prohibits discrimination "with respect to * * * *any* matter * * * *indirectly* related to employment," under the court's rationale, it would encompass even nonsupervisory conduct.

Had the General Assembly intended R.C. 4112.02(A) to burden individual employees, it could have expressed that intention. See, *e.g.*, R.C. 4112.02(G). The majority's contention that the General Assembly chose to accomplish this same end by defining "employer" as equating with "employee" is unconvincing. I read R.C. 4112.01(A)(2) as confirming that employers are legally responsible for the discriminatory conduct of individual employees.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.