[Cite as *Keehan v. Korenowski*, 2017-Ohio-7050.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| DANIEL J. KEEHAN | C.A. No.   28221 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| NICHOLAS KORENOWSKI, et al. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellees | CASE No.   CV-2015-05-2811 |

DECISION AND JOURNAL ENTRY

Dated: August 2, 2017

HENSAL, Judge.

{¶1}   Plaintiff-Appellant, Daniel Keehan, appeals the judgment of the Summit County Court of Common Pleas, dismissing his complaint for failure to state a claim. This Court affirms in part and reverses in part.

I.

{¶2}   This appeal stems from the dismissal of Mr. Keehan's complaint wherein he asserted claims against Certech, Inc., Morgan Advanced Ceramics, Inc., Morgan Advanced Materials, PLC (collectively, the "Morgan Defendants"), Nicholas Korenowski, Lynsey Poulton, and John Stang for violations of Ohio's whistleblower statute and wrongful discharge in violation of public policy. Mr. Keehan's complaint asserted that Mr. Korenowski, Ms. Poulton, and Mr. Stang were employees of the Morgan Defendants who had the authority to discipline him, or otherwise affect the terms and conditions of his employment.

{¶3}   The complaint indicates that Mr. Keehan worked as a general manager for the Morgan Defendants at their facility located in Twinsburg, Ohio.  In order to meet their labor needs, the Morgan Defendants had a contractual relationship with Flexible Staffing, a company that provided temporary employees.  At the time Mr. Keehan started with the Morgan Defendants in 2012, the Morgan Defendants were utilizing over 125 temporary employees from Flexible Staffing.  The complaint notes that the majority of Flexible Staffing personnel came from Puerto Rico, and that Flexible Staffing sponsored their stay in the United States.

{¶4}   According to Mr. Keehan, he noticed numerous illegal, unethical, and unprofessional incidents involving Flexible Staffing's employees and its owner.  With the Morgan Defendants' approval, Mr. Keehan began using a different staffing agency and reduced the number of Flexible Staffing employees to less than 12 by 2014.  Regarding the illegal, unethical, and unprofessional incidents, Mr. Keehan alleged that: (1) several physical altercations occurred between Flexible Staffing personnel; (2) Flexible Staffing's owner tried to bribe him in order to increase Flexible Staffing's business with the Morgan Defendants; (3) a Flexible Staffing employee tried to bribe an employee from Rapid Response (another staffing agency that the Morgan Defendants used) in an effort to obtain green cards and licenses on behalf of Flexible Staffing; (4) Rapid Response employees complained of harassment from Flexible Staffing employees; (5)  Flexible Staffing employees tried to recruit Rapid Response employees to work for Flexible Staffing; (6) Flexible Staffing's invoices failed to include any sales tax; (7) under the guise of offering a new person to act as a liaison between Flexible Staffing and the Morgan Defendants, Flexible Staffing's owner arranged for a woman to proposition Mr. Keehan; (8) Flexible Staffing employees had undisclosed felony convictions; (9) Flexible Staffing employees were being paid under the table and their W-2s were being altered in order to obtain government

subsidies; and (10) a Flexible Staffing employee was wanted for murder in Puerto Rico. Mr. Keehan also alleged that he was informed that his predecessor was under investigation for receiving kickbacks from Flexible Staffing.

{¶5} Mr. Keehan asserted that he informed Kristine Waggoner, the Morgan Defendants' Vice President of Human Resources, that he had concerns regarding employee safety, and indicated that he wanted to terminate the use of Flexible Staffing. He also asserted that he reported all "unethical conduct" by phone to the Morgan Defendants. Additionally, he asserted that he notified the Morgan Defendants about certain nonconforming airline parts that were being shipped to a client in Mexico, and that the nonconformity was likely to cause an imminent risk of harm to persons and a hazard to public health and safety. According to Mr. Keehan, the Morgan Defendants did not investigate any of the issues he brought to their attention.

{¶6} Following his conversation with Ms. Waggoner, Mr. Keehan sent a letter to Mr. Stang (President of Morgan Advanced Materials, North America), outlining some of these issues. Mr. Keehan later met with Ms. Poulton (Responsible Business Program and Risk Manager for the Morgan Defendants) to report the issues regarding Flexible Staffing and his concerns regarding "various illegal and unethical matters he had uncovered." Ms. Poulton allegedly indicated that she was unaware of these issues and requested a copy of the letter Mr. Keehan sent to Mr. Stang. A few days after their meeting, Mr. Keehan was terminated.

{¶7} Following his termination, Mr. Keehan sued the Morgan Defendants and Mr. Korenowski, Ms. Poulton, and Mr. Stang (collectively, "Defendants"), alleging violations of Ohio's whistleblower statute and wrongful discharge in violation of public policy. Defendants removed the case to the United States District Court for Northern District of Ohio on the basis of

diversity jurisdiction, but that court ultimately remanded the matter to the Summit County Court of Common Pleas. *See Keehan v. Certech, Inc.*, N.D.Ohio No. 5:15-CV-1236, 2015 WL 8483179, *9 (Dec. 10, 2015).

**{¶8}** Upon remand, Defendants moved to dismiss Mr. Keehan's complaint for failure to state a claim under Civil Rule 12(B)(6). Mr. Keehan opposed the motion, but the trial court entered judgment in favor of Defendants and dismissed Mr. Keehan's complaint with prejudice. Mr. Keehan now appeals, raising two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT FOUND THAT APPELLANT DID NOT STATE A CLAIM PURSUANT TO R.C. [] 4113.52

**{¶9}** In his first assignment of error, Mr. Keehan argues that the trial court erred by dismissing his whistleblower claims against Defendants. This Court reviews a trial court's granting of a motion to dismiss for failure to state a claim under Civil Rule 12(B)(6) de novo. *State ex rel. Dellagnese v. Bath–Akron–Fairlawn Joint Economic Dev. Dist.*, 9th Dist. Summit No. 23196, 2006-Ohio-6904, ¶ 8. "Dismissal is appropriately granted once all the factual allegations of the complaint are presumed true and all reasonable inferences are made in favor of the nonmoving party, and it appears beyond doubt that the nonmoving party cannot prove any set of facts entitling him to the requested relief." *Id.*, citing *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992).

**{¶10}** We begin our analysis with a review of Ohio's whistleblower statute, codified at Revised Code Section 4113.52. The statute "addresses the situation where an employee in the course of his or her employment becomes aware of a violation of any state or federal statute or any ordinance or regulation of a political subdivision *that the employer has the authority to*

*correct*, and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm or a hazard to public health or safety or is a felony." (Emphasis sic.) *Contreras v. Ferro Corp.*, 73 Ohio St.3d 244, 246-247 (1995); R.C. 4113.52(A)(1)(a). "Under such circumstances, [the statute] *requires* that the employee orally notify his or her supervisor or other responsible officer of the employer of the violation *and* subsequently file with that person a written report that provides sufficient detail to identify and describe the violation." (Emphasis sic.) *Id.* at 247; R.C. 4113.52(A). "If an employer takes any disciplinary or retaliatory action against an employee as a result of the employee's having filed [such] a report * * * the employee may bring a civil action" against the employer for injunctive relief, or for the remedies set forth in the statute, including reinstatement of the employee's position and payment of back wages. R.C. 4113.52(D) and (E). Importantly, "[i]n order for an employee to be afforded protection as a 'whistleblower,' such employee must strictly comply with the dictates of R.C. 4113.52. Failure to do so prevents the employee from claiming the protections embodied in the statute." *Contreras v. Ferro Corp.*, 73 Ohio St.3d 244 (1995), syllabus.

{¶11} We will first address Mr. Keehan's argument regarding the trial court's dismissal of his claim against the individual defendants (i.e., Mr. Korenowski, Ms. Poulton, and Mr. Stang). In their motion to dismiss, Defendants argued that the individual defendants did not qualify as "[e]mployer[s]" under the whistleblower statute and, therefore, could not be subject to liability thereunder. The trial court agreed, as do we.

{¶12} The whistleblower statute defines "[e]mployer" as "any person who has one or more employees. 'Employer' includes an agent of an employer, the state or any agency or instrumentality of the state, and any municipal corporation, county, township, school district, or

other political subdivision or any agency or instrumentality thereof." R.C. 4113.51(B). Mr. Keehan argues that the "agent of an employer" language clearly indicates that the statute provides for individual liability. In support of his argument, he cites Ohio's unlawful discrimination statute, which defines "[e]mployer" to include "any person acting directly or indirectly in the interest of an employer." R.C. 4112.01. He argues that because the Ohio Supreme Court has held that a supervisor can be held liable under the unlawful discrimination statute, and because that statute provides similar remedies to those available under the whistleblower statute, the whistleblower statute should be interpreted to allow for individual liability against his supervisors. *See Genaro v. Cent. Transport, Inc.*, 84 Ohio St.3d 293, 300 (1999) (holding that "for purposes of R.C. Chapter 4112, a supervisor/manager may be held jointly and/or severally liable with her/his employer for discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112."). The trial court disagreed, holding that the individual defendants could not be subject to liability under the whistleblower statute because they were not "[e]mployer[s]" as defined therein.

{¶13} The only appellate court to address this issue is the Fifth District's decision in *Armstrong v. Trans-Service Logistics, Inc.*, which the trial court relied upon in reaching its conclusion. 5th Dist. Coshocton No. 04CA015, 2005-Ohio-2723. There, the court rejected a similar argument with respect to the Ohio Supreme Court's holding in *Genaro* (i.e., because the Ohio Supreme Court held that a supervisor could be held individually liable under the unlawful discrimination statute, the whistleblower statute should be similarly interpreted to create individual liability). In this regard, the Fifth District noted that the definition of "employer" under the unlawful discrimination statute was far broader than its definition under the whistleblower statute. *Id.* at ¶ 40. It further noted that the definition of "employer" under the

whistleblower statute aligned more closely with its definition under Title VII given its use of "agency terminology[,]" which the *Genaro* decision acknowledged was far less reaching than the definition of "employer" under the unlawful discrimination statute. *Id.* at ¶ 38, 40; *Genaro* at 299. Thus, the court was unpersuaded by the appellant's argument in that regard.

{¶14} Additionally, the Fifth District reasoned that the whistleblower statute speaks directly to employer liability, and that the remedies afforded thereunder are "clearly designed to be levied against the corporate entity as opposed to an individual supervisor." *Armstrong* at ¶ 41. It concluded that the statute's reference to agents of the employer was included for the purpose of respondeat superior liability of the employer, and held that the whistleblower statute does not create individual liability for supervisors. *Id.* at ¶ 42, 43.

{¶15} We are persuaded by the Fifth District's analysis of *Genaro* and the comparison the Fifth District drew between the definition of "[e]mployer" under the whistleblower statute, and its definition under Title VII, which defines "employer" to include "any agent" of the employer. 42 U.S.C. 2000e. In light of analogous case law indicating that the inclusion of agency terminology in the definition of "employer" does not extend liability to individual supervisors and/or employees, we agree with the Fifth District's – and the trial court's – resolution of this issue. *See, e.g.*, *Yesudian ex rel. U.S. v. Howard Univ.*, 270 F.3d 969, 972 (D.C.Cir.2001) ("Even in cases arising under Title VII, which explicitly defines 'employer' as including 'any agent [of the employer]' * * * we and all other circuits have held that the word 'employer' does not cover a supervisor in his personal capacity."). We, therefore, hold that the trial court did not err by dismissing Mr. Keehan's whistleblower claim against the individual defendants.

{¶16} We now turn our attention to Mr. Keehan's argument with respect to his whistleblower claim against the Morgan Defendants. In their motion to dismiss, Defendants argued that Mr. Keehan's whistleblower claim against the corporate defendants failed because: (1) the alleged violations contained in the complaint reflected the activities of Flexible Staffing and its owner, and the Morgan Defendants had no authority to correct those alleged violations; (2) Mr. Keehan failed to allege that he provided oral and written notice to the same supervisor; and (3) Mr. Keehan failed to allege that he reported the alleged violations to the appropriate external authority. We will address each argument in turn.

{¶17} Regarding whether the Morgan Defendants had the authority to correct the alleged violations, the trial court noted that Mr. Keehan's complaint was unclear as to which activities he attributed to Flexible Staffing, and which he attributed to the Morgan Defendants. The trial court, therefore, found that "numerous questions and issues exist as to whether the actions alleged were within the control of the Morgan Defendants, and Defendants [did] not establish[] that [Mr. Keehan] can prove no set of facts upon which would allow recovery on this particular issue."

{¶18} Next, the trial court addressed Defendants' argument that Mr. Keehan failed to allege that he provided oral and written notice to the same supervisor as required under Section 4113.52(A)(1)(a). The trial court agreed with Defendants. It noted, however, that Mr. Keehan made general allegations throughout his complaint with respect to providing both oral and written notice, but determined that these general allegations lacked sufficient factual support, and that Mr. Keehan failed to clarify how the various reports and notifications applied to the claim at issue. We disagree.

{¶19}  As previously noted, before an employee can avail himself of the protections under the whistleblower statute, he must orally notify his supervisor "of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety [or] a felony * * *."  R.C. 4113.52(A)(1)(a).  Subsequent to orally notifying a supervisor, the employee is required to file a written report with that supervisor. *Id.*

{¶20}  Mr. Keehan alleged that he informed Ms. Waggoner "of his concerns regarding the safety of the employees, the safety of his own family and his own safety and that he wanted to terminate the services of Flexible Staffing[.]"  He then alleged that "[a]fter he met with [Ms.] Waggoner * * * and because he felt he needed to set the record straight as to what was happening at the Twinsburg plant, [he] sent written notice to [Mr.] Stang through [his] attorney, outlining these issues * * *."

{¶21}  Next, Mr. Keehan alleged that he then met with Ms. Poulton and reported the issues with Flexible Staffing, as well as his concerns regarding the various illegal and unethical matters that he uncovered.  His complaint states that:

> [he] discussed with [Ms.] Poulton his concerns with the Morgan Defendants' business relationship with Flexible Staffing, the physical altercations engaged in by Flexible Staffing's temporary employees, the threats made by Flexible Staffing's management directed at [him], the attempts to seduce [him] by representatives of Flexible Staffing, and Flexible Staffing's practice of failing to include sales tax in its invoices submitted to the Morgan Defendants and/or certain John Doe Defendants. [He] also disclosed the suspected kickback scheme between Flexible Staffing and his predecessor, the attempted bribes, paying employees under the table and fraudulent W-2s. [He] further disclosed that nonconforming airline parts were being shipped which posed an imminent risk of physical harm and threatened public health and safety.  [He] also disclosed to [Ms.] Poulton that he memorialized many of these incidents in a letter to John Stang as well as had previously provided notice to other management personnel.

{¶22} Mr. Keehan then alleged that Ms. Poulton requested a copy of the letter he sent to Mr. Stang. Despite alleging that she requested a copy, there is no specific allegation that he provided it to her. Later in the complaint, however, he alleged that he "provided written reports directly to: * * * [Ms. Poulton]." While Mr. Keehan's complaint is not the picture of clarity, we conclude that Mr. Keehan adequately alleged that he gave both oral and written notice to at least one person: Ms. Poulton.

{¶23} Lastly, the trial court found that Mr. Keehan failed to report the alleged violations to the appropriate external authority. On appeal, however, Defendants concede that the whistleblower statute does not require an employee to report to an external authority, and assert that the trial court's reference to Mr. Keehan's failure to do so was merely dicta that did not affect its analysis. *See* R.C. 4113.52(A)(1)(a) (providing that an employee "may file a written report" after the other statutory requirements are met).

{¶24} In light of the forgoing, we hold that the trial court erred by dismissing Mr. Keehan's whistleblower claim against the Morgan Defendants on the basis that Mr. Keehan failed to allege strict compliance with the statute's requirements.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED WHEN IT FOUND THAT APPELLANT DID NOT STATE A CLAIM FOR WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY.

{¶25} In his second assignment of error, Mr. Keehan argues that the trial court erred by dismissing his claim for wrongful discharge in violation of public policy. We agree.

{¶26} Ohio law recognizes an exception to at-will employment when the employee's termination violates a statute and "thereby contravenes public policy." *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228 (1990), paragraph two of the syllabus. To

establish a claim for wrongful discharge in violation of public policy, an employee must establish that: (1) a "clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element)"[;] (2) "dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element)"[;] (3) "[t]he plaintiff's dismissal was motivated by conduct related to the public policy (the causation element)"[;] and (4) "[t]he employer lacked overriding legitimate business justification for the dismissal (the overriding justification element)." (Emphasis omitted.) *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, ¶ 12-16, quoting *Painter v. Graley*, 70 Ohio St.3d 377, 384 fn. 8 (1994). While an employee may maintain a wrongful-discharge claim on the basis of a violation of the public policy embodied in the whistleblower statue, the employee must first comply with that statute's requirements. *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134 (1997), paragraph three of the syllabus.

{¶27} In his complaint, Mr. Keehan argued that clear public policies exist relating to the following statutes: Revised Code Chapter 5739 ("Sales Tax"); Title 57 of the Ohio Revised Code ("Taxation"), Title 26 of the United States Code ("Internal Revenue Code"); 8 U.S.C. 1324a ("Unlawful Employment of Aliens); and Revised Code Chapter 2307 ("Civil Actions"). He also argued that clear public policies exist regarding the prohibition against obtaining government subsidies based upon fraudulent information, as well as providing nonconforming goods that pose a threat to public safety and can result in the imminent risk of physical harm.

{¶28} In their motion to dismiss, Defendants argued that Mr. Keehan failed to allege facts sufficient to support a claim for wrongful discharge because the statutes cited in his complaint were not independent sources of public policy and, even if they were, he failed to

establish that Defendants, rather than Flexible Staffing, violated those public policies. They also argued that, to the extent that any violations related to their conduct, those claims were derivative of his whistleblower claim. Relatedly, they argued that Mr. Keehan's wrongful-discharge claim was simply derivative of his whistleblower claim, and that it could not survive a motion to dismiss because Mr. Keehan failed to allege compliance with the whistleblower statute. Thus, because he failed to allege compliance with the whistleblower statute, he could not establish a claim for wrongful discharge based upon the public policy protecting whistleblowers.

{¶29} The trial court agreed with Defendants that Mr. Keehan failed to allege any sources of public policy independent of the public policy protecting whistleblowers. In this regard, the trial court found that Mr. Keehan made "little or no distinction between the existence of the law or statute, and the public policy upon which his claim is based" and that he appeared to be "confusing the source of law itself as a public policy that prohibits, or would be jeopardized by, his termination." Given its determination that Mr. Keehan failed to allege strict compliance with the whistleblower statute, the trial court held that his derivative wrongful-discharge claim likewise failed.

{¶30} Assuming without deciding that the trial court properly determined that Mr. Keehan's wrongful-discharge claim was derivative of his whistleblower claim, given our resolution of the previous assignment of error, we hold that the trial court erred by dismissing Mr. Keehan's derivative wrongful-discharge claim on the basis that he failed to allege strict compliance with the whistleblower statute. Mr. Keehan's second assignment of error is sustained on that basis.

III.

**{¶31}** Mr. Keehan's first assignment of error is overruled to the extent that he argues that the trial court erred by dismissing his whistleblower claim against the individual defendants. Mr. Keehan's first assignment of error is sustained as it relates to the trial court's dismissal of his whistleblower claim against the Morgan Defendants. Mr. Keehan's second assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part.

Judgment affirmed in part
and reversed in part.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
SCHAFER, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

MICHAEL G. POLITO, JOSEPH T. BURKE, NATHANIEL G. SZEP, and ASHLEY E. LOYKE, Attorneys at Law, for Appellant.

REBECCA J. BENNETT and JACLYN C. STAPLE, Attorneys at Law, for Appellees.